■ In the Matter of the Claim of BARBARA TINELLI, Respondent, v KEN DUNCAN, LTD., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [604 NYS2d 641] —Yesawich Jr., J. Appeal from two decisions of the Workers' Compensation Board, filed April 5, 1990 and April 18, 1991, which, *inter alia,* ruled that the death of claimant's decedent was caused by an occupational disease, and awarded workers' compensation benefits.

Claimant's decedent, who for 30 years had been employed full time as a photographic darkroom technician, was diagnosed in 1979 as suffering from cancer of the pancreas, gallbladder and liver. He died in October of that year; he was 51 years of age. After a protracted hearing, at which testimony was received from five experts on the issue of causation, an Administrative Law Judge denied claimant's application

for benefits. The Workers' Compensation Board (hereinafter the Board) reversed this decision and awarded benefits, finding decedent's cancer was caused by his extended exposure to several chemicals in the darkroom, and was therefore an occupational disease. The employer and its insurance carrier appeal, contending that the testimony of claimant's two experts was not sufficient to establish a causal relationship between exposure to the chemicals at issue and the type of cancer suffered by decedent, such that the cancer could be found to be an occupational disease, and also that claimant failed to establish that decedent was actually exposed to the chemicals in the course of his employment. Our review of the record leads us to conclude that it contains substantial evidence in support of the Board's findings with regard to both causation and exposure, and therefore we affirm.

The employer and carrier contend that in the absence of statistical studies demonstrating a correlation between a particular employment and a disease, it is improper to conclude that the condition constitutes an occupational disease. To be considered an occupational disease, however, it is only necessary that the illness be "one which results from the nature of the employment * * * brought about by * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations" *(Matter of Goldberg v 954 Marcy Corp.,* 276 NY 313, 318-319). It is not necessary that this connection be proven by means of statistical studies. Simply put, "[t]here must be a recognizable link between the disease and some distinctive feature of the claimant's job" *(Matter of Harman v Republic Aviation Corp.,* 298 NY 285, 288).

Here, Nancy Lord and Justus Kaufman, claimant's medical experts, opined that the exposure to several carcinogenic photographic chemicals, which was a natural incident of decedent's employment, was the most probable cause of his cancer. Lord, a pathologist and chemical researcher, explained particularly how and why the gallbladder would be subject to similar types of cancer as the urinary bladder, and in so doing provided a "reasoned hypothesis" in support of her conclusions *(see, Matter of Beltran v Allied Maintenance Corp.,* 45 AD2d 795, 796; *Matter of Benenati v Tin Plate Lithographing Co.,* 29 AD2d 805, 806), which were derived in part from a study linking certain of the chemicals involved with urinary tract cancer. Lord's report also adverted to a study linking

nitrilotriacetic acid with adenocarcinoma, the same type of cancer decedent contracted. We cannot say, after carefully reviewing the totality of the doctors' testimony, that their opinions were so speculative as to be bereft of any probative value (see, Matter of Cyr v Bero Constr. Corp., 75 AD2d 914, 915).

Turning to the question of exposure, although admittedly there is no direct evidence of decedent's exposure to the chemicals, support for the Board's finding may be found in the reports and testimony of several of the expert witnesses, who relate, on the basis of information supplied by claimant, that decedent was so exposed. In the absence of any evidence to the contrary, these reports and testimony, entitled as they are to a presumption of truth (see, Workers' Compensation Law § 21 [5]; Matter of Middleton v Coxsackie Correctional Facility, 38 NY2d 130, 133), furnish sufficient evidence of exposure to sustain the Board's finding in this regard.

Furthermore, although they are hearsay, the Board could have found claimant's out-of-court statements reliable, as they were corroborated by the testimony of Lord, Kaufman, who is a surgeon, and Lester Fox, an impartial specialist for the Board, each of whom reported, on the basis of independent research, that several of the chemicals listed by claimant are, or were at one time, used regularly in photographic developing and printing processes. Lord reported that Dektol, a developing solution, contains hydroquinone, one of the chemicals which has been found to be carcinogenic in animals, and that betanaphthylamine, another carcinogen, was used in the toning of prints, before it was regulated in the early 1970s. Kaufman, in his report, also noted that phenidine and hydroquinone are used in the developing process, and that nitrilotriacetic acid is used in fixing solutions. Coupled with the undisputed particulars of decedent's employment, including the fact that he worked eight hours per day in a poorly ventilated darkroom with only a short lunch break, the experts' findings support a reasonable inference that decedent was exposed to some of the chemicals in question (see, Matter of Yannon v New York Tel. Co., 86 AD2d 241, 244, lv denied 57 NY2d 605, 726).

Inasmuch as the expert's reports and testimony establish a "reasonable link" between exposure to certain chemicals and development of adenocarcinoma of the gallbladder or pancreas, and also that the same chemicals are, or were, commonly used in photographic development processes, the Board's classification of this type of cancer as an occupational

disease associated with employment as a photographic lab technician, and its concomitant finding that decedent contracted it as a result of his employment in that capacity, both have a proper basis in the record.*

Mikoll, J. P., Mercure, Crew III and Casey, JJ., concur. Ordered that the decisions are affirmed, with one bill of costs.

---

* Although the employer and carrier argue that the Board improperly considered a newspaper article reporting a 1983 National Cancer Institute study, which had not been before the Administrative Law Judge, the Board's decision reveals that, in reaching its determination, it did not rely on that article, but rather on the testimony of Lord and Kaufman.