[645 NYS2d 593]

In the Matter of the Claim of CAROLYN ARTISTE, Respondent, v KINGSBROOK JEWISH MEDICAL CENTER et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, July 18, 1996

---

### APPEARANCES OF COUNSEL

*James P. O'Connor,* New York City *(Marc H. Silver* of counsel), for State Insurance Fund, appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Iris A. Steel* and *Daniel F. De Vito* of counsel), for Workers' Compensation Board, respondent.

### OPINION OF THE COURT

WHITE, J.

Claimant, while working as a nurse's aide in a long-term nursing home/hospital, was accidentally stuck in the right hand on March 30, 1989 by a needle that a registered nurse had just used to inject insulin into an elderly diabetic patient, a procedure that does not involve the drawing of blood. Claimant began feeling ill within a week or two of this incident, and was found to be infected with the human immunodeficiency virus (hereinafter HIV) in July 1989. Subsequent testing and diagnosis revealed that claimant was suffering from AIDS and is permanently totally disabled. Claimant filed an employee's claim for compensation dated February 8, 1990, relating her illness to the March 1989 accidental puncture.

Following a hearing, the Workers' Compensation Law Judge (hereinafter WCLJ) established the case for accident, notice and causal relationship. A panel of the Workers' Compensation Board affirmed the WCLJ's decision, finding that "claimant contracted her AIDS condition as a result of the punctured wound to her right hand when she was stuck by the needle on 3/30/89". Upon request of the employer's workers' compensation carrier, the full Board rescinded the decision and referred the matter back to the Board panel for further consideration. Ultimately, the Board panel modified the former decisions by determining that "claimant contracted AIDS during the course of [her] employment as a health care professional and that this

constitutes an occupational disease within the meaning of [the Workers' Compensation Law]".*

Workers' Compensation Law § 2 (15) defines an "occupational disease" as "a disease resulting from the nature of employment and contracted therein". The term "nature of employment" has been defined to mean "conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general" (*Matter of Goldberg v 954 Marcy Corp.*, 276 NY 313, 319). Generally, an occupational disease is found where a job requires a worker to be exposed to deleterious substances over a number of years (*see, Matter of Tinelli v Ken Duncan, Ltd.*, 199 AD2d 567; *Matter of Yannon v New York Tel. Co.*, 86 AD2d 241, *lv denied* 57 NY2d 605, 726; *Mylroie v GAF Corp.*, 81 AD2d 994, *affd* 55 NY2d 893). Here, since the etiologic agent of AIDS is HIV (*see*, Harrison's Principles of Internal Medicine, at 1568 [Isselbacher 13th ed 1994]), the determinative question is whether exposure to HIV is a generally recognized risk of the occupation of nurse's aide.

It is understood that HIV is transmitted by sexual contact, by blood or blood products, or by breast milk from an infected mother to an infant (*see, id.*, at 1569). Claimant testified that her job required her to attend to her patients' personal needs, to change their bed linen and to help them dress. She further testified that nurses would give her the job of getting urine from incontinent patients, a procedure that involved the use of a needle. She stated that, while doing this procedure, she was stuck on four occasions prior to March 1989 with needles that had been exposed to urine. Claimant admitted that her former husband, who she had divorced in 1976, died of AIDS in 1985. However, claimant stated that she had no sexual contact with her husband after 1973 and that none of her subsequent partners were infected with HIV to her knowledge.

The registered nurse who had accidently stuck claimant testified that the patient she had injected with insulin was not infected with HIV as far as she knew. She also testified that claimant, as a nurse's aide, was not qualified or permitted to

---

* The Board's decision indicates that claimant suffered from an occupational disease pursuant to Workers' Compensation Law § 3 (1) (29), a provision that does not exist in the law. Respondent contends that the Board's intent was to refer to Workers' Compensation Law § 3 (2) (30); however, in view of the disposition of this appeal we need not address this issue.

inject patients and it was very unusual for nurse's aides, unlike nurses, to be accidentally stuck by needles as they do not administer medications. Also submitted into evidence was a letter from claimant's employer indicating that in March or April 1989, there were no patients known to be infected with HIV in the nursing home where claimant worked. The employer's other witnesses testified that the patient who had received the insulin shot had been admitted to the nursing home in 1982 with a history of diabetes, seizure disorder and organic brain syndrome. The medical witness testified that from his review of this patient's records there was no evidence suggesting that this patient was HIV-positive or at risk to acquire the virus.

From our review of the record, we conclude that the Board's determination is not supported by substantial evidence since the proof establishes that contraction of AIDS is not an occupational disease within the meaning of the Workers' Compensation Law insofar as nurse's aides are concerned since the exposure to HIV via objects contaminated with blood or blood products is not a generally recognized risk of such occupation. We further note that claimant's assertion that urine is a transmitting agent for HIV, which the Board accepted, lacks scientific support (see, Harrison's Principles of Internal Medicine, at 1571 [Isselbacher 13th ed 1994]). Accordingly, the Board's decision is reversed.

CARDONA, P. J., MERCURE, CASEY and PETERS, JJ., concur.

Ordered that the decision is reversed, with costs, and claim dismissed.