[No. A044870. First Dist, Div. Three. Mar. 14, 1990.]

CONNIE ZIPTON et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD, CITY OF SAN
LEANDRO et al., Respondents.

## COUNSEL

Davis, Cowell & Bowe, J. Thomas Bowen and Leslie A. Eberhardt for Petitioners.

William B. Donohoe, Thomas, Hall, Salter & Lyding, William R. Thomas, Mark A. Cartier and Don E. Clark for Respondents.

Goshkin, Pollatsek, Meredith & Lee and Samuel E. Meredith as Amici Curiae for Respondents.

## OPINION

**BARRY-DEAL, Acting P. J.**—Petitioner Connie Zipton (hereafter petitioner), individually and as guardian ad litem for her two minor sons, seeks review of the order of respondent Workers' Compensation Appeals Board (hereafter Board) denying reconsideration of the decision of the workers' compensation judge (hereafter WCJ) who held that petitioner failed to establish the evidentiary foundation necessary to trigger the statutory presumption of industrial causation pursuant to Labor Code section 3212.1.[1]

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Section 3212.1 provides in pertinent part: "In the case of active firefighting members of fire departments of cities, counties, cities and counties, districts, or other public or municipal corporations or political subdivisions, and active firefighting members of the fire departments of the University of California and the California State University . . . , and in the case of active firefighting members of the Department of Forestry and Fire Protection, or of any county forestry or firefighting department or unit . . . , and peace officers as defined in Section 830.1 and subdivision (a) of Section 830.2 of the Penal Code who are primarily engaged in active law enforcement activities, the term 'injury' as used in this division includes cancer which develops or manifests itself during a period while the member is in the service of the department or unit, *if the member demonstrates that he or she was exposed . . . to a known carcinogen as defined by the International Agency for Research on Cancer, or as defined by the director, and that the carcinogen is reasonably linked to the disabling cancer.* [¶] The compen-

Petitioner contends that the Board erred by not invoking the presumption in her behalf, thereby shifting the burden to respondent City of San Leandro (hereafter respondent) to prove that the cancer suffered by her husband, Michael Zipton, deceased, did not arise out of and occur in the course of his employment as a firefighter for respondent.

At issue is the construction of section 3212.1, and specifically, the definition of the phrase "reasonably linked." For the reasons discussed below, we affirm the Board's order, and hold that petitioner has failed to prove by a preponderance of the evidence that Zipton's fatal cancer was reasonably linked to his industrial exposure to carcinogens.

### Factual and Procedural Background

Michael Zipton was employed as a firefighter for respondent from October 1, 1970, until April 12, 1987. His duties included the active suppression of fires. During this period, he was exposed to various carcinogens, as defined by the International Agency for Research on Cancer (IARC),[2] while fighting fires. The specific number of carcinogens to which Zipton actually was exposed cannot be ascertained from this record. The parties do agree that he was exposed to the following carcinogens known to cause cancer in humans according to the IARC studies: arsenic, asbestos, certain polyaromatic hydrocarbons, vinylchloride, chromium, and acrylonitrile.

In April 1987, Zipton became seriously ill and stopped work. In May 1987, he was diagnosed as suffering from widespread undifferentiated carcinoma of unknown origin.

---

sation which is awarded for cancer shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits, . . . [¶] The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. . . ." (Italics added.)

[2] In 1971, the IARC initiated a program to evaluate the carcinogenic risk of chemicals to humans by producing critically evaluated monographs on individual chemicals. The term "carcinogenic risk" in the IARC Monographs on the Evaluation of the Carcinogenic Risk of Chemicals to Humans, World Health Organization, International Agency for Research on Cancer, volumes 1 to 29 (Oct. 1982 supp. 4) is defined as the probability that exposure to a chemical or complex mixture, or employment in a particular occupation, will lead to cancer in humans. The criteria developed by the IARC is categorized in terms of sufficient evidence, limited evidence, and inadequate evidence of carcinogenicity. "Sufficient evidence" indicates that there is a causal relationship between the agent and human cancer. In the case of chemicals for which there is "sufficient evidence" of carcinogenicity in experimental animals, the IARC considers such chemicals to pose a carcinogenic risk to humans. The IARC classifies 23 chemicals and groups of chemicals that are causally associated with cancer in humans, and 61 chemicals, groups of chemicals, or industrial processes, that are probably carcinogenic to humans.

On May 19, 1987, Zipton filed a claim for workers' compensation benefits, alleging that his cancer was occupationally related.

On February 29, 1988, Zipton died, at age 39, from the effects of the cancer. On March 1, 1988, an autopsy revealed the following: "metastatic undifferentiated carcinoma involving liver, hepatic, pancreatic and periaortic lymph nodes, left adrenal, right and left lung."

On March 11, 1988, petitioner filed an application for death benefits, and petitioned the Board for a finding of industrial causation of the disability and death of Zipton pursuant to Government Code section 21026, and for an award of the special death benefit pursuant to Government Code section 21363.[3] On April 5, 1988, petitioner was appointed guardian ad litem and trustee for her minor sons, Jeremy and Casey Zipton.

Respondent denied liability. Numerous medical opinions were obtained regarding the industrial relationship of Zipton's cancer. The parties filed trial briefs and the matter was submitted to the WCJ on the documentary record, regarding the application of the presumption of industrial causation set forth in section 3212.1.

On October 27, 1988, the WCJ issued his decision. As pertinent, he held that because a primary entry site for the cancer could not be identified, petitioner failed to establish a reasonable link between Zipton's cancer and the industrial exposure to carcinogens, as required by section 3212.1. Therefore, she was not entitled to the presumption of industrial causation. Absent the presumption, the WCJ further held that petitioner did not meet her burden of proving that Zipton's cancer was industrially related.

On November 21, 1988, petitioner sought reconsideration, contending that requirement of a primary tumor site as a prerequisite to establishing a reasonable link resulted in a strict, technical evidentiary hurdle, defeating the intended expansive purpose of section 3212.1. On December 21, 1988, the Board denied reconsideration, and adopted the WCJ's report and recommendation on reconsideration (hereafter Board opinion) dated December 5, 1988.

On December 28, 1989, we granted review.

### MEDICAL EVIDENCE

The medical evidence before the Board consisted primarily of the reports and testimony of four well-qualified doctors: Michael Jensen-Akula, M.D.,

---

[3] The Board found that Zipton did not sustain an industrially related disability within the meaning of Government Code section 21026. Therefore, petitioner was not entitled to the special death benefit under Government Code section 21363.

Internal Medicine (Zipton's treating physician at Kaiser Permanente); Selina Bendix, Ph.D., Bendix Environmental Research, Inc. (a consulting toxicologist engaged by petitioner's attorney); Phillip L. Polakoff, M.D., M.P.H., M.Env.Sc., Occupational/Environmental Medicine, Toxicology and Epidemiology (engaged by petitioner's attorney); and Piero Mustacchi, M.D., Clinical Professor of Medicine and Preventive Medicine, Occupational Epidemiology, University of California, San Francisco (engaged by respondent's attorney).

Dr. Jensen-Akula diagnosed Zipton's condition as metastatic undifferentiated carcinoma and stated that he was unaware of any known association between Zipton's cancer and his exposure to toxic chemicals on the job. He noted: "Since the specific type of epithelial carcinoma is not clear in this case, it would be very difficult to associate this with any specific toxin or poison, although I would be interested in having a list of toxic chemicals that you feel he has been exposed to. At this point, I cannot specifically state any definite relationship between any toxic exposure and aggravation cause or acceleration of his tumor." After reviewing the toxicology report, Dr. Jensen-Akula concluded that he was unable to specifically comment on any direct cause and effect relationship between Zipton's exposure to industrial carcinogens and his cancer.

Dr. Polakoff stated in his comprehensive report of February 6, 1988, that cancer due to occupational exposure is indistinguishable from cancer due to other causes. Carcinogens may produce cancer at organs distant from the site of contact, and the potency of a particular carcinogen is not uniform for all tissues. Dr. Polakoff continued: "Cancer is generally regarded as a disease of old age. There are 2 factors that generally draw our attention to chemically-induced cancers as opposed to natural occurrence. One is the appearance of cancer earlier in life than expected, the second is simply looking for a higher than normal incidence rate in the worker cohort or population being evaluated."

Specifically regarding Zipton's situation, Dr. Polakoff noted that Zipton was in excellent health prior to 1987; his life-style was relatively free of other risk factors, e.g., he did not smoke, drink, or use drugs; he had not traveled to exotic locales; he had no previous occupational exposure nor any unique hobbies; there was no history of cancer in his immediate family; and he contracted cancer at a relatively young age. Furthermore, Zipton had direct and continuous exposure to a host of known occupational carcinogens. Moreover, epidemiological studies documented excess cancer in various organ sites, as well as total cancer rates, among firefighters.

Based on all of the factors, Dr. Polakoff concluded that Zipton's 17 years as a firefighter for respondent contributed to the "genesis of his cancer and

his markedly depleted lifespan. . . . [¶] Although the definitive genesis of his cancer will never be completely known, I believe that his history of serving as a firefighter for over 17 years definitely contributed to its onset."

Dr. Bendix examined Zipton prior to his death, and initially reported on November 16, 1987. At the time of her examination, Dr. Bendix was unaware that the cancer had been diagnosed as a metastatic undifferentiated carcinoma with the primary tumor site unknown. At that time, the preliminary evidence indicated that the primary site was either the lungs or liver, and therefore, Dr. Bendix initially concentrated on these organs, insomuch as the original biopsy involved liver cells.

Dr. Bendix outlined Zipton's exposure history to numerous chemical carcinogens in the course of his employment as a firefighter. With references to scientific and epidemiological studies, she documented many liver and lung carcinogens found in smoke, and discussed their relevant latency periods in reference to Zipton's 17 years of exposure. Dr. Bendix concluded that it was probable that Zipton's employment "caused or materially contributed to his cancer which had a liver or lung primary site."

In a subsequent report dated April 14, 1988, upon reviewing the final pathology report and learning that the primary tumor site was not the liver or lungs, but unknown, Dr. Bendix emphasized: "Consideration of an unknown primary cancer metastatic to the liver broadens rather than restricts the range of carcinogens to which firefighters are exposed which may be relevant to this case. Most of the chemicals listed as liver carcinogens in my first report also affect other sites."

Dr. Bendix acknowledged in her final report that it was impossible to ascertain the usual age of occurrence of Zipton's cancer since the primary site was unknown. However, she noted that death from metastatic cancer is not common at the age of 40. Dr. Bendix concluded that Zipton's cancer was probably caused by exposure to chemical carcinogens in the smoke which he inhaled as a firefighter.

Dr. Mustacchi, in his report of March 18, 1988, concluded that work exposure played no role in Zipton's development of cancer, but did not give any indication as to what he thought might have caused the cancer. He did not discuss possible risk factors, other than eliminating chemical exposure on the job as a possible cause of Zipton's cancer. The major thrust of Dr. Mustacchi's report was directed to taking exception to the conclusions reached by Dr. Bendix regarding Zipton's industrial exposure to specific carcinogens, an issue rendered moot by the subsequent Board finding.

## BOARD OPINION

Addressing whether Zipton's fatal cancer came within the ambit of section 3212.1, the WCJ initially determined that petitioner proved the requisite exposure by a preponderance of the evidence. The WCJ stated: "This conclusion is reached after close study of the reports of Drs. Mustacchi and Bendix; although Dr. Mustacchi disagrees with Dr. Bendix as to the status of some of the borderline substances or those not definitely shown to be related to cancer in humans, it is still evident that at least several of them meet the criteria."

Turning to the second requirement of section 3212.1—proof of a "reasonable link" between Zipton's cancer and his industrial carcinogenic exposure—the WCJ emphasized: "[T]o apply the presumption it must then be demonstrated by a preponderance of the evidence that the carcinogen is reasonably linked to the disabling cancer, and therein lies the major difficulty in this case. . . . [¶] Unfortunately, the very nature of the diagnosis is such that the burden of proof of industriality . . . was impossible to meet regardless of the effort involved." Without scientific evidence as to the nature of the primary cancer, the WCJ concluded that petitioner failed to prove that Zipton's cancer was reasonably linked to his industrial exposure.

## LEGISLATIVE HISTORY

■ It is fundamental that when a court endeavors to construe a statute, it must ascertain the intent of the Legislature in order to accomplish the purpose of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

In the matter before us, the legislative history does not change the outcome. We are concerned, however, that neither the parties to this action, nor amicus California Compensation Defense Attorneys' Association demonstrate an awareness of the specific legislative history. Because this case presents such a troublesome set of circumstances and a difficult issue to resolve, the pertinent legislative history is consequential and should be discussed.

■ The foremost purpose of the presumptions of industrial causation found in the Labor Code (§§ 3212, 3212.1, 3212.2, 3212.3, 3212.4, 3212.5, 3212.6, 3212.7, 3213) is to provide additional compensation benefits to certain public employees who provide vital and hazardous services by easing the burden of proof of industrial causation. ■ ■ ■ (*Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 297 [123

Cal.Rptr. 506]; *Smith* v. *Workmen's Comp. Appeals Bd.* (1975) 45 Cal.App.3d 162, 166 [119 Cal.Rptr. 120].)[4]

Section 1 of Assembly Bill No. 3011, 1981-1982 Regular Session, added section 3212.1 to the Labor Code, thereby extending the presumption of industrial causation to encompass cancer suffered by certain active firefighters. (Stats. 1982, ch. 1568, § 1, p. 6178.)[5] Section 3212.1 defines the applicable condition as "cancer which develops or manifests itself" during the employment period. ■ Unlike the other presumptions, however, it additionally requires a showing (1) of *exposure* to a known carcinogen as defined by the IARC, and (2) *that the carcinogen is reasonably linked to the disabling cancer* before the presumption can be invoked.

In its original form, section 3212.1 only required, in conformity with the other presumption statutes, that the cancer develop or manifest itself during the employment. (Assem. Bill No. 3011 (1981-1982 Reg. Sess.) § 1.) The bill underwent several amendments, apparently in response to considerable opposition from state and local agencies concerned with its potentially excessive financial impact. There was also some skepticism regarding whether cancer was actually an occupational disease encountered by firefighters. (See Senate Report to the Chairman of the Joint Committee on Fire, Police, Emergency and Disaster Services in California (1987) Firefighters: A Battle With Cancer [hereafter cited as 1987 Joint Committee Report], letter to Senator Campbell dated Aug. 17, 1987.)

Additionally, the Assembly added a sunset clause to effect the repeal of section 3212.1 on January 1, 1989. However, following receipt of the 1987 Joint Committee Report demonstrating that cancer was in fact an occupational hazard of firefighters and that the financial cost of the presumption had been much less than anticipated, apparently in spite of the fact that the mortality rate from cancer among firefighters had increased, the Legislature repealed the sunset date.[6] (See 1987 J. Com. Rep., *supra*, pp. 3-5, 15-17, 31.)

The most cogent statement of legislative intent regarding section 3212.1 is found in a letter dated August 26, 1982, from legislative counsel to

---

[4] The presumptions, which are a reflection of public policy, are implemented by shifting the burden of proof in an industrial injury case. Where facts are proven giving rise to a presumption under one of these statutes, the burden of proof shifts to the party, against whom it operates, to prove the nonexistence of the presumed fact, to wit, an industrial relationship. (Cf. *Gillette* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 312, 320 [97 Cal.Rptr. 542]; Evid. Code, § 606.)

[5] Effective January 1, 1990, the presumption also was extended to peace officers as defined in Penal Code sections 830.1 and 830.2, subdivision (a). (Stats. 1989, ch. 1171, § 2, No. 6 Deering's Cal. Legis. Service, pp. 4498-4499.)

[6] Section 3212.8, which would have repealed section 3212.1, was repealed effective January 1, 1988. (Stats. 1987, ch. 1501, § 1.)

Senator Newton Russell. As pertinent, counsel stated: "The workers' compensation law . . . , generally speaking, requires every employer . . . to secure the payment of workers' compensation for injuries to employees acting within the course of their employment. Before an employee is entitled to workers' compensation benefits, it must be shown that the injury was proximately caused by the employment (subd. (c), Sec. 3600, Lab. C.). . . . [¶] If A.B. 3011 is chaptered, the specified firefighters could use this presumption and be entitled to workers' compensation benefits *without showing that the injury was proximately caused by the employment*, unless the local public agencies could provide otherwise." (10 Assem. J. (1981-1982 Reg. Sess.) pp. 17852-17853, italics added.)

We glean from the legislative history that the initial draft of section 3212.1 (Assem. Bill No. 3011, *supra*) was met by stiff resistance from self-insured state and local agencies which were predicting economic catastrophe. (See 1987 J. Com. Rep., *supra*, p. iii.) Because of this initial panic and the resulting pressure placed on the Legislature, it is evident that the reasonable link requirement was added to appease public entities in order to assure that the bill would be passed. (See 1987 J. Com. Rep., *supra*, p. iii.)

Ironically, the information provided in the 1987 Joint Committee Report indicates that local public entities may be faring better economically under the cancer presumption law.[7] If correct, it appears that the original reason

---

[7] The 1987 Joint Committee Report reads, as pertinent: "An argument frequently heard in opposition to the firefighter cancer presumption law is the high fiscal costs of that presumption for public employers. [¶] In response to the financial concerns, the *estimated* cost of workers compensation and related benefits attributable to the cancer presumption law appear to be minor. Much higher costs were anticipated when the Legislature passed the original cancer presumption bill in 1982. Those costs were deemed reasonable for the compensation of firefighters who had contracted cancer as a result of their occupation. However, according to recent estimates, the law will not be as costly as originally thought. [¶] Based on a random survey of fire agencies, the Commission on State Mandates estimated the average annual State cost of the firefighter cancer presumption law for the 5-year period covering the fiscal year 1982/83 through fiscal year 1986/87 was approximately $250,000. Furthermore, those costs attributed to the fifth year the law was in effect were roughly 1/3 of the highest cost fiscal year. Therefore, those who argued that costs for firefighter cancer presumption claims *would continue* to escalate were incorrect. The Commission's estimate of the average annual costs of the cancer presumption law are well below the $500,000 ceiling on reimbursements from the States Mandates Claims. [¶] Furthermore, local jurisdictions stand to fare far better under a cancer presumption law. Before the law was enacted, local agencies were responsible for the full cost of workers' compensation benefits, or for the increased premiums resulting from successful claims for firefighters job-related cancer. In addition to the full hospital, surgical, medical disability, indemnity and death benefits costs, local agencies also had to bear the legal, administrative and other overhead expenses associated with handling a firefighter's claim. [¶] However, under the cancer presumption law—when the Legislature adopts the recommendations of the Commission on State Mandates—local entities insured by the State Compensation Insurance Fund (SCIF) may be reimbursed for any increases in workers' compensation premium costs attributable to the cancer presumption. Thus, no additional cost

for adding the reasonable link requirement—to curb a potentially disastrous financial impact—may be nonexistent, and public entities may be saving money with the implementation of section 3212.1.

While the legislative history reveals an intent on the part of the Legislature to ease the burden of proof of industrial causation by removing the barrier of proximate cause, in application a reasonable link requirement is no less than the logical equivalent of proximate cause. Moreover, we discern that the requirement was precipitated by the fear of financial doom, but that this fear may be unfounded.

In summary, it may be that there is no purpose to be served by the reasonable link requirement. If indeed metastatic cancer, primary site unknown, is a common medical diagnosis in cancer cases, and therefore results in a pattern of defeating cancer claims of firefighters and police officers by requiring a burden of proof which is medically impossible to sustain, the Legislature may wish to reexamine the reasonable link requirement.[8] However, this is clearly a legislative task. Our task is to interpret the reasonable link requirement in light of the facts before us.

### REASONABLE LINK REQUIREMENT

The determination of what minimum factual elements must be established in order to invoke the presumption under section 3212.1 is a question of law that is reviewable by the courts. (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1989) § 10.08[5], p. 10-42.4; cf. *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864 [101 Cal.Rptr. 105, 495 P.2d 433]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115 [251 P.2d 955].)

■ Petitioner had the initial burden of proving by a preponderance of the evidence that Zipton's disabling cancer was reasonably linked to his industrial exposure to carcinogens. (§ 3202.5; *Wehr* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 188, 193 [211 Cal.Rptr. 321]; *California State Polytechnic University* v. *Workers' Comp. Appeals Bd.* (1982) 127 Cal.App.3d 514, 520 [179 Cal.Rptr. 605].) " 'Preponderance of the evi-

will accrue to the local agency. On the other hand, local self-insured agencies may be reimbursed 50 percent of the actual costs attributable to the cancer presumption law; including but not limited to staff, benefit and overhead costs. Thus, self-insured local agencies can expect a minimum of 50 percent savings on claims for job-related firefighter cancer. [¶] While the financial impact on the State and local agencies cannot be identified precisely, there is no supporting data to assume that the cost would be excessive." (At pp. 15-17, fns. omitted.)

[8] At oral argument, the attorneys were asked to advise the court whether the situation faced by petitioner—a burden of proof made impossible by the current state of medical knowledge—is a common one. They were unable to cite any other similar cases.

dence' means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. When weighing the evidence, the test is not the relative number of witnesses, but the relative convincing force of the evidence." (§ 3202.5.)

Although we recognize that the Legislature intended to ease the burden of proof of industrial causation faced by firefighters in cancer cases, as emphasized by petitioner, it was incumbent on petitioner to produce prima facie evidence that Zipton's cancer and, ultimately, his death were reasonably linked to the industrial exposure.

■ Here, there was no evidence whatsoever that the cancer was reasonably linked to the industrial exposure. All of the medical evidence, including the autopsy report, established that a primary tumor site could not be identified. Without this information, it was impossible for petitioner to prove a reasonable link. The WCJ stated: "There is no scientific evidence as to the nature of the primary cancer, and apart from sheer speculation it is impossible based upon the record herein to pinpoint within reasonable medical probability the carcinogen or carcinogens that caused the malignancy. . . . [T]he essential missing element, i.e., the nature of the carcinogen and its relationship to the carcinoma that developed and metastasized . . . leaves an evidentiary gap. It may be true, as applicant argues, that the presumption's purpose is to fill in gaps and insufficiencies in the evidence *once it has been established that an applicable condition exists . . .* , but here we cannot reach that point since insufficient evidence exists to activate the presumption *ab initio.*"

Petitioner argues that a reasonable link is established by virtue of the exposure to carcinogens, known to cause lung and liver cancer, and the existence of cancer in the lung and liver organs. We disagree. Petitioner ignores the fact that the cancer found in these organs had metastasized. By definition, a metastasis is a secondary cancer growth which has migrated from the primary site of the disease in another part of the body Here, the medical evidence establishes without dispute that the cancer found in Zipton's liver and lungs *did not originate* in either of these organs, but migrated from an unknown primary site.

Without identification of the underlying factual linkage, i.e., the primary tumor site, the opinions of Drs. Bendix and Polakoff are highly speculative and conclusionary. Dr. Polakoff's opinion regarding the lack of other recognized nonindustrial risk factors is well taken. Nevertheless, it is pure conjecture to conclude that a reasonable link exists between the industrial exposure and an undifferentiated cancer when the primary site is unknown, and

by virtue of this fact the cancer cannot be attributed to any particular carcinogen.

It is not our intention to imply that in every cancer case a primary site must be established in order to invoke the presumption of industrial causation under section 3212.1. In determining whether a reasonable link exists, sufficient to invoke the presumption, the proper inquiry should be whether it is more probable than not that a cancer is linked to the industrial exposure. "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." (*Jones* v. *Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 403 [209 Cal.Rptr. 456].)

In the matter before us, however, without the identification of a primary tumor site, there is *no* evidence from which to *reasonably* infer that Zipton's cancer, in the absence of other reasonable causal explanations, was more likely the result of industrial exposure than nonindustrial exposure. To make that leap, as petitioner urges, would require that we simply ignore the legislative directive that a reasonable link must be established by a preponderance of the evidence before the presumption can be invoked.

While the legislative mandate that the workers' compensation laws are to be liberally construed applies to the construction of section 3212.1 (§ 3202; see *Muznik* v. *Workers' Comp. Appeals Bd.* (1975) 51 Cal.App.3d 622, 633 [124 Cal.Rptr. 407]), it does not authorize the creation of nonexistent evidence. (*Wehr* v. *Workers' Comp. Appeals Bd., supra*, 165 Cal.App.3d 188, 195; *Sully-Miller Contracting Co.* v. *Workers' Comp. Appeals Bd.* (1980) 107 Cal.App.3d 916, 926 [166 Cal.Rptr. 111].) Furthermore, the Legislature expressly provided that "[n]othing contained in Section 3202 shall be construed as relieving a party from meeting the evidentiary burden of proof by a preponderance of the evidence." (§ 3202.5.)

Petitioner's reliance on *Muznik* v. *Workers' Comp. Appeals Bd., supra*, 51 Cal.App.3d 622, is misplaced. *Muznik* concerned the construction of the statutory heart presumption embodied in section 3212 and the meaning of its phrase "heart trouble."[9] Given the liberal mandate of section 3202 and the general rule that statutory language is to be given its commonly understood meaning, the *Muznik* court held that the phrase "heart trouble" in section 3212 "assumes a rather expansive meaning." (*Id.*, at p. 635.) However, unlike the heart presumption statute, section 3212.1 requires an additional showing that the industrial exposure is reasonably linked to the

---

[9] In order for an eligible employee to be entitled to the presumption in section 3212, it must be shown that "heart trouble" has developed or manifested itself during a period while such employee is employed by a relevant agency.

disabling cancer. Establishment of this linkage is a question of fact, which must be shown by a preponderance of the evidence. (§ 3202.5.) This additional criterion distinguishes the instant case from *Muznik* and its construction of section 3212, which is much less specific regarding the requisite elements of proof, and therefore, subject to considerably more flexibility in its interpretation. As noted by the WCJ herein, the gap created by the absence of facts necessary to establish a reasonable link simply cannot be bridged by the rule of liberal construction.

In conclusion, petitioner has failed to establish by a preponderance of the evidence that her deceased husband's cancer was reasonably linked to his industrial exposure to carcinogens while he was employed as a firefighter by respondent.

The Board's order denying reconsideration is affirmed.

Merrill, J., and Strankman, J., concurred.

A petition for a rehearing was denied April 4, 1990, and petitioners' application for review by the Supreme Court was denied June 6, 1990.