[No. A062192. First Dist., Div. Two. Mar. 25, 1994.]

RIVERVIEW FIRE PROTECTION DISTRICT, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and WALTER SMITH, Respondents.

COUNSEL

Thomas, Hall, Salter & Lyding and Douglas E. Starns for Petitioner.

McLaughlin & Pegnim and Thomas M. Pegnim for Respondents.

OPINION

PHELAN, J.—We hold that firefighters who develop cancer after being exposed to carcinogens in the course of employment need not show that their cancer was proximately caused by those carcinogens in order to benefit from the presumption of industrial causation established in Labor Code section 3212.1.[1]

## BACKGROUND

Walter Smith (applicant), born September 10, 1947, was a firefighter for Riverview Fire Protection District (employer) from September 1980 on. During his employment he developed stomach cancer which became manifest in September 1990. Applicant had surgery that month and returned to

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

work in November 1990, with residual symptoms of tiredness at work and occasional stomach pain. Statistically applicant was given a probability of survival after five years of about 25 to 30 percent. He died on October 16, 1993.

Applicant testified, and it was not seriously disputed, that while he was working for employer he was exposed to asbestos, soots, tars and other substances which are known to cause stomach cancer. Workers' Compensation Judge (WCJ) Philip Miyamoto found that the cancer was presumed to be industrially caused under Labor Code section 3212.1 and awarded applicant permanent disability of 7.5 percent plus further medical treatment. The Workers' Compensation Appeals Board (Board) denied reconsideration, with one commissioner dissenting. We denied employer's petition for writ of review. The Supreme Court granted review and remanded the case to us with directions to grant the writ.

We hold that under section 3212.1 applicant was not required to prove that his cancer was proximately caused by industrial exposure to carcinogens. Nevertheless the Board's application of the section 3212.1 presumption of industrial causation was erroneous because applicant did not present substantial evidence of a reasonable link between the industrial exposure and the cancer.

### BURDEN OF PROOF AND SECTION 3212.1

In the usual workers' compensation case, before an employer can be held liable, the worker must show not only that the injury arose out of and in the course of employment (AOE-COE) but also that ". . . the injury is proximately caused by the employment . . . ." (§ 3600, subd. (a)(2) & (3).) Although workers' compensation law must be "liberally construed" in favor of the injured worker (§ 3202), the burden is normally on the worker to show proximate cause by a preponderance of the evidence. (§ 3202.5.)[2]

The Legislature eased this burden for certain public employees who provide vital and hazardous services by establishing a series of presumptions

---

[2]Section 3202 provides that the workers' compensation laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

Section 3202.5 provides in relevant part: "Nothing contained in Section 3202 shall be construed as relieving a party . . . from meeting the evidentiary burden of proof by a preponderance of the evidence. 'Preponderance of the evidence' means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. When weighing the evidence, the test is not the relative number of witnesses, but the relative convincing force of the evidence."

of industrial causation. (*Zipton* v. *Workers' Comp. Appeals Bd.* (1990) 218 Cal.App.3d 980, 987 [267 Cal.Rptr. 431] [hereafter *Zipton*].) For example, for certain peace officers compensable injury is defined to include a hernia, heart trouble or pneumonia developed during employment. AOE-COE and proximate cause are presumed and need not be shown. (§§ 3212, 3212.2, 3212.3, 3212.4, 3212.5, 3212.6, 3212.7, 3213; see generally, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 231 et seq., p. 802 et seq.)

The WCJ and the Board found that the presumption of industrial causation in section 3212.1 applied in this case. That statute does not provide the level of presumption enumerated in the other statutes listed in the preceding paragraph. Rather, it contains a limited and "disputable" presumption. Section 3212.1 provides as follows in relevant part: "In the case of active firefighting members of fire departments . . . , the term 'injury' as used in this division includes cancer which develops or manifests itself during a period while the member is in the service of the department or unit, if the member demonstrates that he or she was *exposed*, while in the service of the department or unit, *to a known carcinogen* as defined by the International Agency for Research on Cancer, or as defined by the director, and that the carcinogen is *reasonably linked* to the disabling cancer.

"The compensation which is awarded for cancer shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits, as provided by this division.

"The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. . . ." (§ 3212.1, italics added.)

### STANDARD OF REVIEW

Employer contends that the Board's finding of industrial injury using the section 3212.1 presumption was not supported by substantial evidence. Under section 5952, our function is not to hold a trial de novo or to exercise independent judgment, but to review the entire record to determine whether the Board's conclusions are reasonable and are supported by substantial evidence. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Patterson* v. *Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 916, 921 [126 Cal.Rptr. 182].)

## Discussion

In order to bring his case within the presumption of section 3212.1, applicant was required to present substantial evidence showing exposure to carcinogens and a "reasonable link" between the carcinogens and the cancer. (§ 3212.1; *Zipton, supra*, 218 Cal.App.3d 980, 988; 1 Herlick, Cal. Workers' Compensation Law Practice (4th ed. 1990) § 10.33, p. 10-60.)

### Exposure to Carcinogens

In the statement of facts in its petition, employer stresses evidence, or lack thereof, from which the Board could have inferred that applicant was not exposed to carcinogens on the job. For example, employer cites evidence that applicant wore breathing apparatus during fires. However, in the argument and authorities portion of its petition employer does not argue that applicant failed to prove the requisite exposure. Employer could not reasonably make that argument because applicant presented ample substantial evidence of exposure, which the WCJ and the Board believed and which we must accept.

For example, applicant introduced in evidence an International Agency for Research on Cancer monograph which showed that asbestos, soots, tars and mineral oils cause cancer in the gastrointestinal tract. Applicant testified that he had been trained to recognize materials encountered in fire fighting. He was able to identify asbestos. During his years as a firefighter, he inhaled asbestos dust and smoke from roof shingles and from insulation around pipes, hot water heaters and furnaces. Expert testimony was not required to prove that applicant was exposed to asbestos. (See, e.g., *Todd Shipyards Corp. v. Black* (9th Cir. 1983) 717 F.2d 1280, 1283, 1284; *Port of Oakland v. Workmen's Comp. Appeals Bd. (Cochran)* (1993) 58 Cal.Comp.Cases 521, 527.) Applicant also testified to having been exposed to and having inhaled soots and tars from fires. He stated that the wearing of a breathing apparatus was a relatively recent phenomenon and that he had not always worn one.

This and other evidence of exposure was not seriously controverted. It provided sufficient evidence to support the finding of industrial exposure required by section 3212.1. As stated above, employer does not contend otherwise in this proceeding.

### Reasonable Link

Whether applicant showed the requisite reasonable link between exposure and cancer is contested here as it was below. Before we address the question

of sufficiency of the evidence, we must examine the meaning of "reasonable link" as it is used in the statutory provision, ". . . the carcinogen is reasonably linked to the disabling cancer." (§ 3212.1.) The term appears in no other California statute and has been discussed in only one reported California decision, the *Zipton* case.[3]

*Zipton* traces the legislative history of section 3212.1 in some detail. (*Zipton, supra,* 218 Cal.App.3d at pp. 987-990.) Briefly stated, the original version of the statute contained a usual presumption, triggered by coincidence of employment and disease, similar to those provided for other illnesses of other public safety workers in the above listed statutes. There followed a "panic" among self-insured state and local agencies that feared economic catastrophe. The reasonable link provision was added in response to these fears. (*Zipton, supra,* at pp. 989-990.) (In fact the fears proved unfounded. [*Id.,* at p. 989, fn. 7.])

*Zipton* does not explain the origin or meaning of "reasonable link," but it does contain this statement about how the court perceived the apparent effect of the reasonable link requirement: "While the legislative history reveals an intent on the part of the Legislature to ease the burden of proof of industrial causation by removing the barrier of proximate cause, in application a reasonable link requirement is no less than the logical equivalent of proximate cause." (218 Cal.App.3d at p. 990.)

Research reveals no subsequent discussion or analysis of this statement. Larson paraphrases the statement, and Witkin quotes it without discussion. (1B Larson, The Law of Workmen's Compensation (1993) § 41.72, pp. 7-654 to 7-655, fn. 3.1; 2 Witkin, Summary of Cal. Law, *op. cit. supra* (1993 supp.) § 232, p. 272.) Herlick and Hanna do not comment on it at all. (1 Herlick, Cal. Workers' Compensation Law Practice, *op. cit. supra,* § 10.33, p. 10-60; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1993), § 3.113[4][b], pp. 3-87 to 3-88.) No case has cited *Zipton* or discussed the meaning of "reasonable link."[4]

The standard rules of statutory construction require that we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction. (See generally,

---

[3]The idea of cancer and numerous other diseases being "linked" or not to toxic waste is mentioned a number of times in *Cottle* v. *Superior Court* (1992) 3 Cal.App.4th 1367, 1373, 1374, 1375, 1382, 1384, 1400, footnote 2, 1401 [5 Cal.Rptr.2d 882]. But the concept of "reasonably linked" is not mentioned.

[4]A writ was denied on similar facts a few months after the *Zipton* decision. (*Gann* v. *Workers' Comp. Appeals Bd.* (1990) 55 Cal.Comp.Cases 393, 394.)

Halbert's Lumber, Inc. v. Lucky Stores, Inc. (1992) 6 Cal.App.4th 1233, 1238-1239 [8 Cal.Rptr.2d 298]; 7 Witkin, Summary of Cal. Law *op. cit.,* *supra,* Constitutional Law, § 94, p. 146.) ■ Each of these tools leads us to conclude that *Zipton* erred in its interpretation of section 3212.1.

Although there is no published discussion of the term "reasonable link," we think it has a plain meaning which is clear on its face. Two things are reasonably linked if there is a logical connection between them. Thus firefighters need not show that industrial exposure to carcinogens proximately caused their cancer, but they must show something more than a mere coincidence of exposure and cancer—they must show a logical connection between the two.

Even if the meaning of reasonable link is not deemed clear on its face, the legislative history, which we discussed above, supports our definition of the term. The legislative history shows that the purpose of the workers' compensation presumption statutes is to ease the burden of proof for certain safety workers. If the Legislature had intended "reasonable link" to be the equivalent of "proximate cause," section 3212.1 would be mere surplusage and would not have been enacted. Keeping in mind the purpose of the presumption statutes, tempered with the fear of excessive financial impact, we think it is clear that the Legislature intended that "reasonable link" requires less of a showing than "proximate cause" but more than mere coincidence of exposure and cancer, that is, a logical connection.

Turning to the third tool of statutory construction, we apply practicality and common sense to the language under consideration, interpreting the words in a workable and reasonable manner. (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra,* 6 Cal.App.4th at p. 1239.) Although we have found no discussion of the concept of reasonable link in any source, the term is used in a few published decisions from which we draw support for the idea that our interpretation of the Legislature's intent makes sense.

In *Tinelli* v. *Ken Duncan Ltd.* (1993) 199 A.D.2d 567 [604 N.Y.S.2d 641], the court affirmed rulings of the Workers' Compensation Board that the death of a worker was caused by an occupational disease. Decedent had been exposed to chemicals in his 30 years of work as a darkroom technician. There were no statistical studies demonstrating a correlation between the industrial chemical exposure and the worker's death from cancer of the pancreas, gall bladder and liver. But New York case law required only that the worker show that work conditions produced his illness as a natural incident of his employment. It was not necessary that this connection be

proven by means of statistical studies; all that was required was a "recognizable link" between the disease and some distinctive feature of the claimant's job.

In light of expert testimony that the photographic chemicals probably caused the cancer, the court held that a "'reasonable link'" had been established between the exposure and the development of cancer. (*Tinelli* v. *Ken Duncan Ltd.*, *supra*, 604 N.Y.S.2d at p. 644.)

In *Silcox* v. *Hillman Co.* (1990) 3 Mich. Workers' Comp. Law Rptr. 3138, the board noted that in all workers' compensation cases the worker must show "a relationship between the injury and the workplace." The board found that the requisite connection existed between events at work and the worker's heart attack which he suffered at home on a Sunday. Michigan evidentiary guidelines required that proof of damage to the heart be "linked" to the employment by sufficient detail about what precipitated the damage to establish a "legal connection" by a preponderance of the evidence. Compensability would be negated by a failure to establish this "reasonable causal linkage." Mere presence of symptoms at work was not sufficient. The worker was required to and did prove "that his physical or emotional stresses were combined with specific cardiac incidents that were reasonably associated with his employment environment or activities."

Although the *Tinelli* and *Silcox* opinions do not deal with a statutory presumption like section 3212.1, they demonstrate commonsense application of the notion of "reasonable link" in the context of workers' compensation.

We hold that more is required under section 3212.1 than the mere coincidence of exposure and cancer. But a showing of proximate cause is not required. Rather, if the evidence supports a reasonable inference that the occupational exposure contributed to the worker's cancer, then a "reasonable link" has been shown, and the disputable presumption of industrial causation may be invoked.

### Sufficiency of Evidence

■ Employer contends that the medical evidence was insufficient to support the finding of reasonable link in this case. We agree.

Employer's expert, Dr. Mustacchi, reported on January 22, 1991, as follows. "I do not know of any human stomach carcinogen described as being prevalent in a firefighter's environment. [¶] Independent of this consideration, one notes that occupationally-incurred cancer as a rule acknowledges a latency period of a couple of decades. Because of this, the 10 or 11

years of work [applicant] had for [employer] seems much too short to be incriminated as having contributed to his stomach cancer."

Dr. Mustacchi expressed his willingness to consider further evidence on the point and concluded, "In the meanwhile, I believe that the chronology of the events . . . renders extremely unlikely an occupational etiology of [applicant's] stomach cancer."

Applicant's expert, Dr. Polakoff, discussed at length principles applicable to occupational cancer and gastric carcinoma generally. He stated that "The time from exposure to a chemical carcinogen to the appearance of a clinically-detectable cancer ranges from approximately 15 years to 30 years, depending on the type of carcinogen and the magnitude of exposure and the type of cancer."

He quoted one study which showed that occupational risk factors for stomach cancer "appear to be asbestos and general dust exposure." He found no studies showing an increased risk of stomach cancer in firefighters. He noted, however, that applicant's "life style history did not present any specific risk factors that would have led him to an increased risk for developing adenocarcinoma of the stomach."

Dr. Polakoff stated that because applicant was employed as a firefighter less than 10 years and based on the lack of any showing in the medical literature of correlation between firefighter work and stomach cancer, "It does not appear to be medically reasonable and probable that [applicant's] employment history as a fire fighter contributed to the genesis of his adenocarcinoma of the stomach at this time."

In conclusion Dr. Polakoff stated, "At the present time there is not enough information in the scientific and medical literature to implicate serving as a fire fighter with any increased risk of gastric cancer. To date asbestos exposure has been shown to be a possible etiological factor for increased gastric cancer. However, there is no evidence that [applicant] has any asbestos-related disease per se. Furthermore [applicant] was diagnosed as having gastric cancer within 10 years of onset of his employment as a fire fighter. Generally the latency period for a solid tumor from the time of initial exposure to onset of cancer is in the range of 15 to 30 years. As such, I do not believe based on existing information that [applicant's] gastric cancer was contributed to by his period of employment as a fire fighter for [employer]."

In a letter to applicant's counsel dated June 4, 1991, in answer to counsel's questions, Dr. Polakoff stated that in all likelihood applicant was

exposed to asbestos during the course of his employment; that asbestos is a carcinogen which has an "identifiable link" to stomach cancer ("[n]umerous epidemiological studies have confirmed this link"); and that applicant was also exposed to other carcinogens which play a role in stomach cancer, including general dust, acrylonitrile, soot and tar.

In a letter to applicant's counsel dated October 18, 1991, Dr. Polakoff answered counsel's further questions as follows. "It is uncommon, but possible that the latency period can be less than ten years. Statistically, the significan[t] majority of cancers occur after 15 or more years from date of initial exposure to asbestos. Nevertheless, one can not deny that asbestos may have played a contributory role in the genesis of [applicant's] stomach cancer. Asbestos is a known gastrointestinal carcinogen.

"Soots and tars are known human carcinogens as defined by the International Agency for Research on Cancer. Acrylonitrile is a known animal carcinogen and suspected human carcinogen. The epidemiological data that presently exists suggests that these agents may contribute to the genesis of stomach cancer; how[e]ver, the data is most limited and additional epidemiological studies must be carried out prior to rendering a more definitive medical opinion."

In his deposition of January 23, 1992, Dr. Polakoff reiterated that it is "possible" to have a latency period of less than 10 years with an asbestos-related gastrointestinal tumor.

The WCJ held that there was no showing of "proximate cause" but found that "[w]ith a preponderance of evidence the applicant has invoked the presumption" of section 3212.1. The WCJ cited evidence that applicant had been exposed to carcinogens which are known to cause stomach cancer, and he found that, unlike the *Zipton* facts, applicant had shown a link to a specific site, citing Dr. Polakoff's statements about the possibility of a less than 10-year latency and the possible role of soots, tars and other carcinogens which could have contributed to applicant's stomach cancer.

The WCJ held as follows: "the expert opinion of Dr. Polakoff standing alone does not constitute a preponderance of evidence upon which to 'proximately' find under . . . § 3600(3) that the applicant's stomach cancer is employment related. [¶] But Dr. Polakoff's expert opinion nevertheless is determined herein to constitute a preponderance of evidence upon which to find under . . . § 3212.1 that applicant's carcinogenic exposure at work 'is reasonably linked' to his stomach cancer."

The WCJ went on to explain that he was finding a lessened burden of proof in order to allow Dr. Polakoff's opinion to support the reasonable link

presumption because it was clear that the Legislature intended to ease the burden of proof in these cases, citing *Zipton*. He stated that his interpretation was consistent with the requirement of section 3202 that workers' compensation laws be liberally construed and with the idea that enactment of section 3212.1 was not an idle act. In conclusion he emphasized that in this case, unlike *Zipton*, there was "actual evidence presented to meet the burden of proof of a reasonable link . . . ."

The Board agreed with the WCJ's views when it denied reconsideration. Commissioner Wiegand dissented, stating he was not satisfied that the reasonable link requirement had been satisfied. He cited evidence including Dr. Polakoff's statements that he did not believe applicant's cancer was industrial and that causation was possible but not probable.

As we stated above, it is clear that the Legislature intended to ease the burden of proof for safety officers. But it is equally clear that the WCJ and majority of the Board went too far in that respect. "Reasonable link" requires some evidence logically connecting industrial exposure to the applicant's cancer. We agree with Commissioner Wiegand that no substantial evidence of that nature is present here.

Dr. Mustacchi found an occupational etiology of applicant's cancer "unlikely." Applicant's own expert, Dr. Polakoff, stated he did not believe that applicant's employment contributed to his cancer. He said it was "possible" that a latency period could be less than 10 years, but that this was not medically reasonable or probable.

Upon our review of the entire record we find insufficient evidence to support the Board's holding that applicant showed a reasonable link between his industrial exposure to carcinogens and his cancer and thereby made a showing sufficient to activate the section 3212.1 presumption.

The Board's decision denying reconsideration is reversed.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied April 18, 1994, and respondents' petition for review by the Supreme Court was denied June 16, 1994. Kennard, J., was of the opinion that the petition should be granted.