[No. B173437. Second Dist., Div. Three. Jan. 31, 2005.]

CITY OF LONG BEACH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and DAVID A.
GARCIA, Respondents.

COUNSEL

Robert E. Shannon, City Attorney, and Barbara de Jong, Principal Deputy, for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Cantrell, Green, Pekich, Cruz & McCort and Wayne McCort for Respondent David A. Garcia.

OPINION

ALDRICH, J.—

INTRODUCTION

David A. Garcia, a police officer employed by petitioner the City of Long Beach (the City), contracted kidney cancer during his employment. A workers' compensation judge (WCJ) found the cancer arose out of and in the course of Garcia's employment, and awarded Garcia benefits. Reconsideration of the WCJ's award was denied. The City sought a writ of review and annulment of the order of the Workers' Compensation Appeals Board (WCAB) denying reconsideration of the findings and award of the WCJ. We affirm the WCAB's order denying reconsideration.

■ Labor Code section 3212.1,[1] as amended in 1999, provides that when certain peace officers and firefighters demonstrate they were exposed to known carcinogens during the course of their employment, it is presumed that any cancer they contract during, or within a specified period after, their employment arose out of and in the course of the employment. The employer may rebut the presumption by showing (1) the primary site of the cancer has been established, and (2) the carcinogen to which the employee was exposed is not reasonably linked to the cancer.

■ The primary issue before us is the proper application of the section 3212.1 presumption, including the question of what showing an employer must make to rebut the presumption. We hold that the statute means exactly what it says: to rebut the presumption, the employer must prove the absence of a reasonable link between the cancer and the industrial exposure to the carcinogen. A mere showing of an absence of medical evidence that the carcinogen has been shown to cause the particular cancer contracted by the

---

[1] All further undesignated statutory references are to the Labor Code.

employee is not sufficient to rebut the presumption. We conclude the evidence was sufficient to establish Garcia was exposed to a known carcinogen, benzene, and therefore the presumption arose in the instant case. Because the Agreed Medical Examiner's (AME) opinion that Garcia's cancer was not occupationally related was based upon the absence of a known cause for kidney cancer and the absence of medical studies showing a link between kidney cancer and benzene, the City failed to rebut the statutory presumption. Accordingly, we affirm the WCAB's order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Garcia's claim and hearing before the WCJ.*

Garcia became employed as a police officer for the City on February 12, 1991. On January 20, 2002, while still employed by the City as a police officer, 35-year-old Garcia was diagnosed with kidney cancer. He filed a claim for compensation benefits, which the City denied.

A hearing was conducted before a WCJ on July 24, 2003, to determine, inter alia, whether the injury arose out of and in the course of employment. Garcia did not testify, but the parties introduced various exhibits, including an International Agency for Research on Cancer (IARC) monograph; Garcia's written statement; medical reports of Dr. Frank R. Villalobos and the AME, Dr. Edward J. O'Neill; documents pertaining to the Legislature's intent in enacting section 3212.1; and the transcript of the AME's deposition.

The evidence showed Garcia had been assigned to patrol duty during his entire tenure with the City. He claimed various industrial exposures to carcinogens, including exposure to asbestos while working in an old police station, as well as exposures to vehicle exhaust, vehicle and other fires, spills, and drug laboratories. Additionally, he pumped gasoline into his patrol vehicle "almost daily." He had no history of any risk factors for carcinoma outside the workplace.

a. *Dr. Villalobos's report.*

Dr. Villalobos primarily considered whether Garcia's claimed exposure to asbestos was linked to kidney cancer. Because Garcia did not have asbestosis, it was medically highly unlikely that asbestos exposure was the cause of his cancer. Attached to Dr. Villalobos's report was an excerpt from a medical treatise. That text stated that exposure to petroleum products had been associated with kidney cancer, but "require[d] further study." (Saunders Manual of Medical Practice (2d ed. 2000) p. 745.)

b.  *AME O'Neill's report.*

The AME's report considered all of Garcia's claimed exposures to carcinogens and concluded, "The cause of his renal cell cancer is medically non-occupationally related." The AME explained, "there is no clear relationship between any particular exposure and development of kidney cancer," and the exposures claimed by Garcia "are not clearly identified as having a specific relationship with kidney cancer." The report continued, "The important point in this case is the fact that Mr. Garcia is a peace officer and as such is covered under Labor Code [section] 3212.1 which specifically states that peace officers exposed to carcinogens are presumed to have an occupational related condition and injury unless it is rebutted. Frankly, the fact that there is insufficient evidence to make a causal linkage between his having had various exposures and the development of his kidney cancer on a medical basis appears to be an amount of information to make a rebuttal. However, whether or not this will satisfy the finder of fact is a separate issue. There is certainly no linkage between the development of his kidney cancer and occupational exposures or endeavors that are clearly identified despite the fact that he has included such things as the almost daily exposure of pumping gas and the potential of lead from pistol qualifying. Exposure to anti-freeze and accidents and secondhand smoke or fires and dope labs may all have been significant exposures, but none are clearly related to the development of kidney cancer."

c.  *AME O'Neill's deposition testimony.*

At his deposition, the AME testified that of the exposures Garcia identified, only benzene and asbestos were known carcinogens. Benzene was a known contaminant of gasoline, and listed by the IARC as a known human carcinogen.

In his opinion, it was reasonably medically probable that there was not a logical connection between benzene exposure and kidney cancer. There was no medical evidence that benzene had been shown to cause kidney cancer. It was highly likely a relationship existed between benzene exposure and, for example, leukemia. However, the causes of kidney cancer as primary disease were unknown. The AME explained, "Can I show you that his kidney cancer was certainly or with reasonable medical probability not caused by any of these occupational exposures? And the answer to that basically is no. I can't except what I've already stated; namely, that the medical literature in general does not support any linkage between them. I can't tell you it cannot happen or doesn't happen or never happens. [¶] . . . [¶] Basically I can say there's no linkage, no positive linkage. I can't say there's no negative linkage and so there's always that potential of a relationship." Therefore, he could not show medically that benzene had *not* caused the cancer.

According to the AME, "medical literature does not, almost exclusively but never say never, deal with the null hypothesis. . . . [The null hypothesis b]asically, says that something is more likely not to happen than to happen, okay. So in medical literature what we generally report on and with rare exception are things that do happen. In other words, that A plus B equals C or causes C. So the ability to find medical literature that says things that don't happen is extremely difficult . . . ."

The AME further explained that certain organs, such as the lung, colon, breast, and prostate, are more susceptible to cancer than other organs. The kidney does not have a "certain predilection" to developing cancer. He testified, "we know a lot about lung cancers and colon cancers and breast cancers and prostate cancers because that makes up such a bulk of the cancers; but then you start going down the list of any other place you can get cancer, and the information diminishes as you go down the list, and we just don't have sufficient information. I mean, if you were to try to gather up all the kidney cancers in Southern California in the last year, you're talking about a couple hundred, and they're widely dispersed so I just can't get clear information on things like chemical exposures."

In the AME's opinion, population studies are of limited value in proving a link between carcinogens and a particular form of cancer. Such studies might show that persons in certain occupations have a higher rate of certain cancers. However, "you can ferret out statistics like that, but you can't make any linkage with them. That's the problem." Because such population studies are not helpful in establishing a reason for the higher incidences, they amount only to anecdotal information.

Like Dr. Villalobos, the AME concluded to a medical certainty that the kidney cancer was not related to a potential exposure to asbestos, because Garcia did not show any other signs of asbestos absorption.

### 2. *The WCJ's decision and petition for reconsideration.*

The WCJ found Garcia had sustained injury arising out of and occurring in the course of his employment. The WCJ's written opinion stated the following: Garcia had demonstrated his exposure to a known carcinogen, benzene, and there was no dispute the cancer arose during his term of service. Therefore, the section 3212.1 presumption applied. The City had failed to controvert the presumption. It was undisputed that the site of the cancer was known. However, the WCJ relied upon the Saunders Manual of Medical Practice excerpt to find that there was a link between the carcinogen and the cancer. The WCJ further explained, "The Legislature intended to ease the Applicant's burden of proof when it changed the presumption statute requiring the Defendant to show no reasonable link between the exposure and the

cancer. Since the medical text finds a link, the Defendant has not been able to make his admittedly difficult burden of proof to show that there is no reasonable link. The medical literature finds some linkage and that is sufficient. [¶] Though not specifically addressing the *Saunder's* text, the AME did state that he cannot say with reasonable medical probability that the cancer was not caused by the occupational exposure. Though he did not find the cancer linked to the occupational exposures, he did not address or rebut the evidence of the *Saunder's* text that there is some linkage. The linkage described in this medical text book is sufficient to prevent [the City] from making its burden of proof to show no reasonable linkage. Accordingly, [Garcia] is entitled to the effect of the presumption and it is found that the kidney cancer did arise out of and occur in the course of the employment." The WCJ found Garcia had not demonstrated other exposures to carcinogens.[2]

The City filed a petition for reconsideration, asserting, inter alia, that the evidence did not justify the findings and the award was unreasonable. In support, the City made essentially the same arguments it advances here. The WCAB denied reconsideration, citing the WCAB's en banc decision in *Faust v. City of San Diego* (2003) 68 Cal.Comp.Cases 1822.

The City petitioned this court for a writ of review, which we issued on July 8, 2004. The City requests that we annul, vacate, and set aside the WCAB's order denying reconsideration. We deny the City's request.

## CONTENTIONS

The City's primary contention is that the WCAB erred by requiring it to "prove the absence of any possible link between the alleged exposure" and kidney cancer. In the City's view, an employer should be considered to have rebutted the statutory presumption if it proves the cancer was not proximately caused by the industrial exposure to carcinogens. The City further argues there was insufficient evidence to prove a link between benzene exposure and kidney cancer, and to prove Garcia was exposed to benzene while on the job.

Garcia, on the other hand, asserts that the WCAB correctly employed the presumption contained in section 3212.1 and the evidence was sufficient to support the WCJ's findings. He also seeks attorney's fees because, he asserts, the City lacked a reasonable basis for its petition.

---

[2] The WCJ found Garcia had failed to prove exposure to asbestos; had failed to prove secondhand smoke was a carcinogen in adults; other chemicals to which Garcia claimed to have been exposed were not known carcinogens; and Garcia had failed to identify which substances he was exposed to when encountering fires and drug laboratories.

## DISCUSSION

### 1. *Standard of review.*

■    When considering a petition for a writ of review on a decision of the WCAB, " ' " '[t]his court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]' " [Citations.]' [Citation.]" (*Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 1041, 1045–1046 [95 Cal.Rptr.2d 858]; see § 5952; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1423–1424 [118 Cal.Rptr.2d 105]; *Reeves v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 22, 27 [95 Cal.Rptr.2d 74]; *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd.* (1994) 23 Cal.App.4th 1120, 1124 [28 Cal.Rptr.2d 601].)

### 2. *Section 3212.1's presumption of industrial causation.*

■    "In the usual workers' compensation case, before an employer can be held liable, the worker must show not only that the injury arose out of and in the course of employment" but also that the injury was proximately caused by the employment. (*Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* 23 Cal.App.4th at p. 1123; § 3600, subd. (a)(3).) The burden is on the employee to show proximate cause by a preponderance of the evidence. (§ 3202.5; *LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 650 [72 Cal.Rptr.2d 217, 951 P.2d 1184]; *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* at p. 1123.) However, in the case of certain public employees who provide "vital and hazardous services" to the public (*Riverview, supra,* at p. 1123), the Labor Code contains a series of presumptions of industrial causation. These presumptions provide that when specified public employees develop or manifest particular injuries or illnesses, during their employment or within specified periods thereafter, the injury or illness is presumed to arise out of and in the course of their employment. (See §§ 3212 [hernia, heart trouble, pneumonia], 3212.2, 3212.3, 3212.4, 3212.5, 3212.6 [tuberculosis], 3212.7, 3212.8 [blood-borne infectious diseases], 3212.85 [exposure to biochemical substances that may be used as weapons of mass destruction], 3212.9 [meningitis], 3212.10, 3212.11 [skin cancer], 3212.12 [Lyme disease], 3213, 3213.2 [lower back impairments].) These presumptions are a reflection of public policy. (*Zipton v. Workers' Comp. Appeals Bd.* (1990) 218 Cal.App.3d 980, 988, fn. 4 [267

Cal.Rptr. 431] (hereafter *Zipton*).) Their purpose is to provide additional compensation benefits to employees who provide vital and hazardous services by easing their burden of proof of industrial causation. (*Id.* at p. 987; *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* at pp. 1123–1124.)

At issue here is section 3212.1, which applies a presumption of industrial causation to cancers contracted by active firefighters and certain peace officers primarily engaged in active law enforcement activities. (§ 3212.1, subd. (a).) It provides, in pertinent part: "(b) The term 'injury,' as used in this division, includes cancer, including leukemia, that develops or manifests itself during a period in which any member described in subdivision (a) is in the service of the department or unit, *if the member demonstrates that he or she was exposed, while in the service of the department or unit, to a known carcinogen* as defined by the International Agency for Research on Cancer, or as defined by the director. [¶] . . . [¶]

"(d) The cancer so developing or manifesting itself in these cases *shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by evidence that the primary site of the cancer has been established and that the carcinogen to which the member has demonstrated exposure is not reasonably linked to the disabling cancer. Unless so controverted, the appeals board is bound to find in accordance with the presumption.*" (Italics added.)

### 3. *Development of section 3212.1.*

■ When interpreting a statute, we are guided by the familiar principle that we must discover the intent of the Legislature, being careful to give the statute's words their plain meaning. (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1261 [8 Cal.Rptr.3d 532, 82 P.3d 740]; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].) If the language of the statute is unambiguous, we presume the Legislature meant what it said and need not resort to extrinsic sources to determine the Legislature's intent. (*Bonnell v. Medical Board, supra,* at p. 1261; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54]; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd., supra,* at p. 355.) If the statutory language is susceptible of more than one reasonable construction, we may look to the legislative history in aid of ascertaining legislative intent. (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].) The words of the statute must be construed in context, keeping in mind the nature and purpose of the statute. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144,

514 P.2d 1224].) " 'It is our task to construe, not to amend, the statute. "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . ." [Citation.]' " (*People v. Leal* (2004) 33 Cal.4th 999, 1008 [16 Cal.Rptr.3d 869, 94 P.3d 1071].) We avoid any construction that produces absurd consequences. (*Bonnell v. Medical Board, supra,* at p. 1263.)

An understanding of section 3212.1 is incomplete without a brief examination of the statute's development. Section 3212.1 was originally enacted during the 1981–1982 legislative session. (*Zipton, supra,* 218 Cal.App.3d at p. 988; Stats. 1982, ch. 1568, § 1, p. 6178.) As enacted in 1982, the statute imposed upon the employee the burden of demonstrating (1) that he or she was exposed, while in the service of the public employer, to a known carcinogen; and (2) that the carcinogen was reasonably linked to the disabling cancer.[3] (Stats. 1982, ch. 1568, § 1, p. 6178; *Zipton, supra,* at p. 990.) The employer could controvert the presumption "by other evidence." (Stats. 1982, ch. 1568, § 1, p. 6178.) As originally drafted, the 1982 legislation did not contain a requirement that the employee demonstrate a reasonable link between the exposure and the cancer. Before the bill was passed, however, the reasonable link requirement was imposed upon employees in response to pressure from self-insured state and local agencies that were concerned about potential "economic catastrophe." (*Zipton, supra,* at pp. 988–989.)

In 1999, section 3212.1 was amended to essentially its current form.[4] (Stats. 1999, ch. 595, § 1.) Committee reports prepared for the Senate and Assembly expressly stated that the bill's purpose was to "remove the requirement that a firefighter or peace officer prove a reasonable link between a carcinogen and the disabling cancer before the cancer is presumed compensable." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 539 (1999–2000 Reg. Sess.) as amended May 25, 1999, p. 1;

---

[3] As enacted in 1982, the statute provided in pertinent part, that in regard to certain firefighters, " 'injury' as used in this division includes cancer which develops or manifests itself during a period while the member is in the service of the department or unit, provided that the member demonstrates that he or she was exposed, while in the service of the department or unit, to a known carcinogen as defined by the International Agency for Research on Cancer, or as defined by the director, and that the carcinogen is reasonably linked to the disabling cancer. [¶] . . . [¶] The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it." (Stats. 1982, ch. 1568, § 1, p. 6178.) In 1989, section 3212.1 was amended to cover specified peace officers. (Stats. 1989, ch. 1171, §§ 1, 2, p. 4544.)

[4] The statute was again amended in 2000. The 2000 amendments extended the application of the statute to additional categories of peace officers. (See Stats. 2000, ch. 887, § 1.)

see Assem. Com. on Insurance, Analysis of Assem. Bill No. 539 (1999–2000 Reg. Sess.) as introduced Feb. 18, 1999, p. 1) The reports explained that the bill "[e]liminates the burden of proving that a carcinogen to which a firefighter or peace officer was exposed is reasonably linked to the cancer" and instead would require that the *employer* "prove, in order to rebut the presumption, that the carcinogen to which a firefighter or peace officer has demonstrated exposure is not reasonably linked to the disabling cancer, provided that the primary site of the cancer has been established." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 539, *supra*, p. 1; Assem. Com. on Insurance, Analysis of Assem. Bill No. 539, *supra*, p. 1.) The reports explained that proponents of the bill believed the then-current law "places an unreasonable burden on the employee to establish the 'reasonable link' to trigger the presumption that the cancer arose out of and in the course of employment." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 539, *supra*, p. 2.) In particular, proponents cited *Zipton, supra,* 218 Cal.App.3d 980, in which "the very nature of the diagnosis made it impossible to reasonably link between the carcinogens and the cancer." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 539, *supra*, p. 2; Assem. Com. on Insurance, Analysis of Assem. Bill No. 539, *supra*, p. 2.)

In *Zipton,* a 39-year-old firefighter died of metastatic undifferentiated carcinoma. (*Zipton, supra,* 218 Cal.App.3d at pp. 983–984.) His surviving spouse and children were found ineligible for workers' compensation benefits because they could not meet the reasonable link requirement. (*Id.* at pp. 990–991.) A primary tumor site could not be identified, and without this information, it was impossible for the surviving spouse to prove a reasonable link between the cancer and any particular carcinogen. (*Id.* at pp. 991–992; Sen. Com. on Industrial Relations, *supra*, p. 2; Assem. Com. on Insurance, *supra*, p. 2.) *Zipton* observed that the predictions of economic disaster made when the bill was initially considered by the Legislature had not been borne out in the years following enactment of the law. Therefore, the court suggested, the reasonable link requirement might serve no purpose. *Zipton* reasoned: "While the legislative history [of the original enactment] reveals an intent on the part of the Legislature to ease the burden of proof of industrial causation by removing the barrier of proximate cause, in application a reasonable link requirement is no less than the logical equivalent of proximate cause. Moreover, we discern that the requirement was precipitated by the fear of financial doom, but that this fear may be unfounded. [¶] In summary, it may be that there is no purpose to be served by the reasonable link requirement. If indeed metastatic cancer, primary site unknown, is a common medical diagnosis in cancer cases, and therefore results in a pattern of defeating cancer claims of firefighters and police officers by requiring a

burden of proof which is medically impossible to sustain, the Legislature may wish to reexamine the reasonable link requirement." (*Zipton, supra,* at p. 990, fn. omitted.)

The committee reports referenced these statements in *Zipton.* (See Sen. Com. on Industrial Relations, *supra,* pp. 2–3; Assem. Com. on Insurance, *supra,* p. 3.) Additionally, the reports noted that, similar to the situation in *Zipton,* "a firefighter in the author's district recently contracted angiosarcoma, a rare heart cancer, but has been unable to link the cancer to the smoke he worked in." (Senate Com. on Industrial Relations, *supra,* p. 2; Assem. Com. on Insurance, *supra,* p. 2.)

The Senate Committee report stated that opponents of the proposed 1999 amendments believed "that presumptions of causation make rejection of non-job causation claims very difficult, exposing the employer to costs which may be unjustified. This bill would deny employers the opportunity to introduce into evidence that cancer may have been the result of other causation." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 539, *supra,* p. 3.)

### 4. *The WCAB did not misconstrue section 3212.1.*

■ "The presumptions of industrial causation found in section 3212 et seq. are rebuttable; and, because they reflect public policy, they are presumptions affecting the burden of proof. [Citations.] 'The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.' (Evid. Code, § 606.)" (*Reeves v. Workers' Comp. Appeals Bd., supra,* 80 Cal.App.4th at p. 30; see *Gee v. Workers' Comp. Appeals Bd., supra,* 96 Cal.App.4th at pp. 1425–1426.) Here, the language of section 3212.1 unambiguously allocates the respective burdens of proof between the employee and employer. To invoke the presumption, the employee must demonstrate, by a preponderance of the evidence, that he or she was exposed, while in the service of the employer, to a known carcinogen. (§§ 3212.1, subd. (b), 3202.5; *LaTourette v. Workers' Comp. Appeals Bd., supra,* 17 Cal.4th at p. 650.) If the employee clears this hurdle, he or she is entitled to the presumption that the cancer arose out of and in the course of the employment. The presumption is "disputable." It may, however, be controverted only in a clearly specified and limited manner: by a preponderance of the evidence that (1) the primary site of the cancer has been established; *and* (2) that the carcinogen to which the employee has demonstrated exposure was "not reasonably linked" to the cancer. (§§ 3212.1, subd. (d), 3202.5.) A preponderance of the evidence means evidence, which when weighed with contrary evidence, has more convincing force and the greater probability of truth. (*Zipton, supra,* 218 Cal.App.3d at pp. 990–991.)

■ The City complains that "the Board put on the employer the burden of proving a negative. The employer must find evidence that conclusively shows no link between the alleged exposure and the cancer. This is an almost impossible burden and one not intended by the Legislature." But, contrary to the City's argument, this is precisely what the plain language of the statute requires. If there was any doubt, the 1999 amendments and the legislative history of those amendments dispels it. The amendments removed the requirement that the employee prove a "reasonable link" and shifted the burden of proof to the employer to *disprove* a reasonable link, and to establish the primary site of the cancer. As noted, "[w]here facts are proven giving rise to a presumption" under one of the workers' compensation presumption statutes, "the burden of proof shifts to the party, against whom it operates, to prove the nonexistence of the presumed fact, to wit, an industrial relationship. [Citations.]" (*Zipton, supra,* 218 Cal.App.3d at p. 988, fn. 4; Evid. Code, § 606.) The inescapable conclusion is that the Legislature intended to remove the burden from employees and enable them to obtain benefits even when it was not possible to prove the cancer was linked to the particular carcinogen.

■ We also observe that section 3212.1's burden-shifting paradigm differs from that contained in other workers' compensation presumption statutes. Nearly all the other presumption statutes state that the presumption may be controverted "by other evidence." (See §§ 3212, 3212.2, 3212.3, 3212.4, 3212.5, 3212.6, 3212.7, 3212.8, 3212.85, 3212.9, 3212.10, 3212.11, 3213, 3213.2.) Section 3212.1, on the other hand, requires the link be controverted only in a specific and limited way: by proof of the cancer's primary site and the absence of a reasonable link. This distinction demonstrates that the Legislature intended to require employers to make the specified showing in order to rebut the presumption. (Cf. *Reeves v. Workers' Comp. Appeals Bd., supra,* 80 Cal.App.4th at p. 28.)

■ The plain meaning of "not reasonably linked" is also readily discernable. Dictionary definitions of "reasonable" include "being in accordance with reason," "not extreme or excessive," "having the faculty of reason," "possessing sound judgment," not absurd, ridiculous, or extreme, and "sensible." (Merriam-Webster's Collegiate Dict. (10th ed. 1996) p. 974; Webster's 3d New Internat. Dict. (1993) p. 1892.) "Link" is defined as, inter alia, "a connecting structure," "a connecting element or factor," "serving to connect," and "to couple or connect." (Merriam-Webster's Collegiate Dict., *supra,* at p. 678; Webster's 3d New Internat. Dict., *supra,* at p. 1317.) When interpreting the earlier version of section 3212.1, *Riverview Fire Protection District* concluded that "reasonably linked" refers to a logical connection between two things. (*Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* 23 Cal.App.4th at p. 1127.)

■ Thus, under the current version of section 3212.1, an employer demonstrates the absence of a reasonable link if it shows no connection exists between the carcinogenic exposure, or that any such possible connection is so unlikely as to be absurd or illogical. Contrary to the City's argument, the statute does *not* require the employer to prove "the absence of *any possible* link." (Italics added.) The statute requires proof no *reasonable* link exists. A link that is merely remote, hypothetical, statistically improbable, or the like, is not a reasonable link. The employer need not prove the absence of a link to a scientific certainty; instead, it must simply show no such connection is reasonable, i.e., can be logically inferred.

■ An employer does not meet its burden merely by showing that no studies exist showing a positive link between the exposure and the particular form of cancer.[5] That no studies exist—perhaps because they have not been undertaken or completed, or because their results were inconclusive—does not prove or disprove anything. The *absence* of medical evidence linking a known carcinogen with a particular form of cancer simply represents a void of information, and cannot be considered proof a reasonable link does *not* exist.

■ Moreover, such a construction does not lead to absurd results. There appears to be no inherent reason why the employee, rather than the employer, should bear the burden of an absence of scientific knowledge. To the contrary, section 3202 provides that the workers' compensation laws shall be "liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202; see *Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1096 [78 Cal.Rptr.2d 500].)

■ The legislative history and development of the statute clearly show the Legislature was concerned with the unfairness to firefighters and peace officers who, while exposed to carcinogens during the course of their job

---

[5] The WCAB, in construing the current version of section 3212.1, has taken the position that an employer cannot rebut the section 3212.1 presumption "by merely proving that there is no evidence demonstrating a reasonable link." (*Faust v. City of San Diego, supra,* 68 Cal.Comp.Cases 1822, 1823 [en banc].) An en banc WCAB decision binds all workers' compensation judges in the same manner a published appellate decision does. (*Gee v. Workers' Comp. Appeals Bd., supra,* 96 Cal.App.4th at p. 1424, fn. 6.) The WCAB's conclusions on questions of law are not binding on this court (*Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 402 [94 Cal.Rptr.2d 130]; *Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 535–536 [94 Cal.Rptr.2d 186]), and the interpretation of a labor statute is a legal question, which we review independently from the determination of the appeals board. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486].) Nonetheless, we generally defer to the WCAB's interpretation of labor statutes unless clearly erroneous. (*Ibid.*; *Gangwish v. Workers' Comp. Appeals Bd.* (2001) 89 Cal.App.4th 1284, 1293 [108 Cal.Rptr.2d 1].)

duties, nonetheless were denied benefits because it was not possible to prove the genesis of the cancer. If we were to hold that the employer met its burden under the amended section 3212.1 merely by showing the *absence* of medical studies or other evidence connecting a particular carcinogen with a particular cancer, the practical effect would be to shift the burden of proof back to the employee, in derogation of the 1999 amendments to the statute. In short, the statute's history suggests the Legislature has made a policy decision that, when it is not possible to determine whether the carcinogenic exposure caused the cancer, the employer, not the employee, should bear the burden of the ambiguity.

█ As noted, the City argues that this places an impossible burden upon employers. Because section 3212.1 describes the presumption as disputable, the City argues, the Legislature cannot have intended to make the presumption impossible to dispute. The City points to the AME's deposition testimony that medical professionals do not deal in the null hypothesis, implying employers will never be able to produce medical studies stating certain carcinogens do not cause certain cancers. We agree that the burden placed upon the employer is a difficult one. However, we disagree that the standard is impossible to meet. If medical studies are available showing that particular cancers have been shown *not* to be caused by certain carcinogens, such evidence, if credited, would suffice. But, even assuming such studies are not readily available, the employer has other avenues of proof available to it. In some cases the employer will be able to demonstrate it is highly unlikely the cancer was industrially caused because the period between the exposure and the manifestation of the cancer is not within the cancer's latency period.[6] (See, e.g., *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* 23 Cal.App.4th at pp. 1129, 1131.) Further, the nature of the manifestation, or other medical evidence, may be sufficient to show the lack of connection. For example, in the instant case, the AME and Dr. Villalobos were able to determine with certainty that the kidney cancer could not have resulted from asbestos exposure, because if asbestos exposure had caused the cancer, evidence of asbestos absorption would have first manifested in the lungs.[7] Other methods of proof, not at issue before us here, may exist as well. For example, perhaps it would be possible for an employer to show that the

---

[6] A "latency period" is the period between the exposure to the carcinogen and the subsequent appearance of a clinically detectable disease. (*Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* 23 Cal.App.4th at p. 1129; see also *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1135 [95 Cal.Rptr.2d 701, 998 P.2d 403].)

[7] The AME stated with certainty that asbestos had not caused the kidney cancer. "[T]he reason is that the current accepted relationship requires evidence of asbestos absorption in the body. And [Garcia] has already had CT [computed tomography] scans of his lungs which includes the pleura. Now, they were normal. So if the CT scan of the lung and the pleura is normal, there's no evidence that he has inhaled and deposited any asbestos in his body so as far as medically scientifically, he has no absorption of asbestos. So if he's never absorbed any

quantity of the carcinogen to which the employee was exposed, or length of time of the exposure, was too small or too brief to have had any detrimental effect.

The City's argument that "reasonable link" is the equivalent of "proximate cause" is unpersuasive. The City points to *Zipton*'s statement, *ante*, that in application a reasonable link requirement is no less than the logical equivalent of proximate cause. (*Zipton, supra,* 218 Cal.App.3d at p. 990.) The City argues that although the statute was amended to shift the burden of proof, the meaning of "reasonable link" has not changed. In support of this interpretation, the City also points to a letter from Assemblyman Louis J. Papan, the author of the 1999 amendment, to another legislator. In that letter, Assemblyman Papan stated, "AB 539 is a response to a recent decision to deny [a Pacifica resident's workers'] compensation benefits to cover cancer treatment for a rare form of cancer that was most likely caused by prolonged smoke exposure. [¶] We do not believe there is a need to further amend AB 539. *This bill in its current form is narrowly drawn. As such, AB 539 would address only the very few cases in which an employee's cancer is so advanced that the primary site of the cancer cannot be determined.*" (Letter from Assemblyman Louis J. Papan to Sen. Patrick Johnston, Aug. 27, 1999, italics added.)

■ These arguments are unpersuasive. Several years after *Zipton* was decided, *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd., supra,* 23 Cal.App.4th 1120, took issue with *Zipton*'s equation of the "reasonable link" requirement with proximate cause. (*Id.* at pp. 1127–1128.) Construing the former version of section 3212.1, *Riverview* reasoned, "Although there is no published discussion of the term 'reasonable link,' we think it has a plain meaning which is clear on its face. Two things are reasonably linked if there is a logical connection between them. Thus firefighters need not show that industrial exposure to carcinogens proximately caused their cancer, but they must show something more than a mere coincidence of exposure and cancer—they must show a logical connection between the two." (*Riverview, supra,* at p. 1127.) *Riverview* observed that because workers generally have to prove proximate causation to obtain benefits (*id.* at p. 1123), if " 'reasonable link' " meant " 'proximate cause,' " the section 3212.1 presumption would have been mere surplusage. (*Id.* at p. 1127.)

■ We believe *Riverview*'s reasoning that, under the former version of section 3212.1, "reasonable link" did not mean "proximate cause," was correct. It is true that when a statute has been construed by the courts, and the

asbestos that deposited in his body, it can't have migrated to any other part of his body so that I could say with no trouble."

Legislature thereafter reenacts the statute without changing the courts' interpretation, the Legislature is presumed to have been aware of, and acquiesced in, the construction. (*People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].) But that canon of construction is inapplicable here. *Zipton* and *Riverview* disagreed about the proper interpretation of the language; therefore, there was no uniform judicial interpretation of the statute prior to the amendment. Moreover, in this instance the Legislature clearly intended not to reenact the statute, but to change the burdens of proof. There is, therefore, no good reason to rely upon *Zipton*'s conclusion in this regard.

■ We are likewise unpersuaded that Assemblyman Papan's letter supports a construction that "reasonably linked" means "proximate cause." While the statements of a sponsoring legislator can sometimes be helpful (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 977, fn. 46 [17 Cal.Rptr.3d 180, 95 P.3d 422]), our Supreme Court has questioned reliance on the views of individual legislators to discern the intent of the entire Legislature. (*Ibid.*; *Kavanaugh v. West Sonoma County Union High School Dist., supra,* 29 Cal.4th at p. 920, fn. 6 [" ' "[I]n construing a statute we do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it." ' [Citation.]"].) Here, neither the Assemblyman's letter, the plain language of the statute, nor the other legislative history related to the amendment suggest the Legislature had a proximate cause standard in mind. To the extent Assemblyman Papan's letter suggests application of the statute was narrow and would be limited to situations in which the primary site of the cancer was not known, this statement is in direct contrast to the plain language of the statute, which requires *both* that the primary site of the cancer be known *and* that the employer prove no reasonable link exists between the exposure and the cancer. "Although legislative history often can help interpret an ambiguous statute, it cannot change the plain meaning of clear language. [Citations.]" (*In re Steele* (2004) 32 Cal.4th 682, 694 [10 Cal.Rptr.3d 536, 85 P.3d 444].)

■ Nor are we convinced by the City's argument that "The burden of proving a negative also makes no sense from the perspective of public policy," in that it imposes a "crippling expense" upon taxpayers. For one thing, section 3212.1 requires that the *employee* demonstrate he or she had been exposed to a known carcinogen. Therefore, the statute requires more than a mere coincidental showing that the employee contracted cancer while employed or within the specified time limits thereafter. Moreover, the presumption only applies to a subset of public employees, i.e., active firefighters, and peace officers "who are primarily engaged in active law enforcement activities." (§ 3212.1, subd. (a).) In any event, the wisdom of the statute, from a fiscal standpoint, is a question for the Legislature alone, not for this court. " 'We may not, under the guise of construction, rewrite the law or give the

words an effect different from the plain and direct import of the terms used.' [Citation.]" (*People v. Leal, supra,* 33 Cal.4th at p. 1008.)

■ In short, the amendment to section 3212.1 represents the Legislature's policy judgment. One may query whether the Legislature foresaw that the presumption would apply in the situation here, where the exposure arose not from activities generally viewed as hazardous police work, but instead from filling a vehicle with gasoline, an activity no different in quality or quantity than those routinely performed by members of the general public. However, the statutory language is clear and specific, and represents the Legislature's policy judgment. If the Legislature believes the statute is overbroad, it is for the Legislature, not this court, to amend it.

5. *Application of section 3212.1 to Garcia's case.*

Applying these principles here, we conclude the WCAB properly denied reconsideration. Contrary to the City's argument, Garcia presented sufficient evidence to prove he was exposed to benzene while pumping gasoline in his patrol vehicle. The parties stipulated that if called to testify, Garcia would competently state the history he provided to the physicians was correct. The AME's report stated that Garcia reported he had been potentially exposed to carcinogens when "pumping gas in his own car" on an "almost daily" basis. At the AME's deposition, Garcia's counsel asked, "there's a history in your report of exposures of variety [*sic*] . . . . [L]et me just put those on the record, and correct me if I'm wrong. In the history in this regard the exposures included . . . 'dope' labs, . . . fires, secondhand cigarette smoke, vehicle fires, spills which I assume some are related to motor vehicle accidents and some to other things, the motor vehicle accident spills apparently including gasoline and antifreeze. *Also exposed to gasoline when filling his patrol vehicle,* and I think mentioned possible lead exposure from the shooting range over the nine years," as well as exposure to asbestos. (Italics added.) The AME confirmed that the foregoing was his "understanding of the history." It was undisputed that Garcia was a patrol officer. The AME testified at his deposition that benzene was a known human carcinogen, and was usually found as a contaminant in gasoline in small amounts. An IARC monograph presented as evidence also listed benzene as a known human carcinogen. The City did not offer evidence showing benzene exposure was not a normal concomitant of pumping gasoline. There was, therefore, sufficient evidence to establish Garcia's exposure to a carcinogen within the meaning of section 3212.1.

■ The City challenges this evidence, arguing Garcia's testimony was uncorroborated, and there was insufficient evidence presented of the frequency of the exposures and the dates upon which they occurred. We

disagree. Garcia related to the physician that he pumped gasoline into his patrol vehicle "almost daily," and the parties stipulated that he would have so testified. The City offers no authority for the proposition that Garcia had to present evidence of the specific dates, and Garcia's statement that he pumped gasoline almost daily was sufficient. Uncontradicted and unimpeached evidence is generally accepted as true. (*Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317–318 [90 Cal.Rptr. 355]; *Keulen v. Workers' Comp. Appeals Bd., supra,* 66 Cal.App.4th at p. 1099.) Given the nature of Garcia's job, there is no reason to doubt that he routinely filled his patrol car with gasoline while on the job. The City also complains there was no evidence of the actual substances to which Garcia was exposed, or evidence that he knew carcinogens were present. But the AME testified benzene was usually found in small amounts as a contaminant in gasoline. The City offers no authority for its suggestion that Garcia must have known, at the time he was pumping the gasoline, that it contained a particular chemical compound.

■ The City's second contention—that "there is no substantial evidence of a reasonable link between any industrial exposure and Mr. Garcia's cancer"—likewise fails. Garcia did not have to prove such a link, as we have explained. The City failed to show such a reasonable link did *not* exist. The AME concluded it was reasonably medically probable that there was no logical connection between benzene exposure and kidney cancer, and his report stated that the cause of the cancer was nonoccupationally related. However, the AME's deposition testimony shows that the basis for these conclusions was that no medical studies had established a positive link between benzene and kidney cancer, and there was no established cause for kidney cancer. As we have explained, the fact that no existing medical studies show a positive link between the cancer and the exposure does not rebut the presumption.

The City criticizes the WCJ's reliance on the excerpt from the Saunders Manual of Medical Practice, which stated that exposure to petroleum products had been associated with increased incidence of kidney cancer, but required further study. The City contends this text entry was insufficient to establish any reasonable link between the exposure and the cancer. But this argument misses the mark. Garcia was not required to show a reasonable link, as we have discussed. Therefore, the adequacy of the excerpt is irrelevant to our analysis.

### 6. *Attorney's fees.*

Garcia seeks an award of attorney's fees predicated on the assertion there was no reasonable basis for this petition for review (§ 5801). The request is denied. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1990) 219

Cal.App.3d 1265, 1273–1274 [268 Cal.Rptr. 699] [holding a petition was not without a reasonable basis where it raised a question of law that was previously unaddressed]; *Crown Appliance v. Workers' Comp. Appeals Bd.* (2004) 115 Cal.App.4th 620, 627 [9 Cal.Rptr.3d 415] [attorney's fees are not "automatically awarded simply because an appellate court affirms the WCAB's decision."].)

## DISPOSITION

The Board's order denying reconsideration is affirmed. Garcia's request for attorney's fees is denied.

Croskey, Acting P. J., and Kitching, J., concurred.