Filed 3/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARINWOOD COMMUNITY SERVICES,<br><br>        Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, RAMOS et al.,<br><br>        Respondents. | A147582<br><br>(WCAB No. ADJ8778127) |

Petitioner Marinwood Fire Protection District, also known as Marinwood Community Services, Inc. (Marinwood), seeks to set aside the decision of the Workers' Compensation Appeals Board (WCAB) holding that firefighter Pete Romo was entitled to the benefit of the rebuttable presumption under Labor Code section 3212.1[1] that his cancer arose out of his employment. The writ raises two legal issues of interpretation of workers' compensation statutes. While our review of such issues is de novo, in light of the WCAB's expertise we "give weight to its interpretations of workers' compensation statutes unless they are clearly erroneous or unauthorized." (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1331.) While neither of the statutes at issue is a model of clarity, the WCAB's interpretations of both are reasonable and we therefore affirm the WCAB decision.

---

        [1] Except as otherwise specified, all further statutory references are to the Labor Code.

# BACKGROUND

Romo worked as a firefighter for three different fire departments. He was a volunteer firefighter for Marinwood from 1989 to 1991 and the San Antonio Volunteer Fire District in Sonoma County (San Antonio) from 2002 to 2006. From 2006 through trial, he was employed full time as a paid firefighter for the City of Mill Valley (Mill Valley). While working for Mill Valley, Romo was diagnosed with prostate cancer.[2]

Marinwood was established in the 1950s as an all-volunteer fire department. By the 1980s, it had a paid fire chief and two paid professional firefighters for each shift. At the time Romo was a volunteer firefighter there, Marinwood had a total of seven paid firefighters and 24 volunteer firefighters.

When Romo was serving as a volunteer firefighter for Marinwood, he fought multiple fires, participated in mandatory weekly drill nights and was required to live within a certain distance from the firehouse, keep certain department-provided gear in his car or bedroom, and keep a paging device with him so he could be paged when needed for a fire. Marinwood provided him with a thick coat, pants, a hood, a helmet, goggles, boots and gloves.

Romo and other volunteers also worked at the fire station, cleaning equipment, refueling tools, sweeping and mopping. Volunteers were considered "on duty all the time" and were required to respond to 75 percent of the calls. Marinwood paid for him and other volunteers to obtain training and certification in CPR and basic life support. Marinwood also trained him on fire suppression for different kinds of fires and on other subjects, such as bleeding control, rope rescue and vehicle extrication.

Volunteer positions with Marinwood were sought after by those who wanted to become firefighters, and the hiring process was competitive. If a volunteer failed to meet the demands of the position, he would be counseled and, if that failed, terminated. Volunteers did most of the firefighting work while Romo was there, taking direction from the on-duty company officer.

---

[2] Mill Valley filed an answer to Marinwood's writ petition essentially joining in Romo's arguments.

Marinwood's fire captain and training officer considers the volunteer firefighters to be employees. When they go on a call, members of the public do not know whether they are volunteers or paid. Marinwood currently provides workers' compensation benefits for volunteers.[3]

Romo filed a claim for workers' compensation benefits with each of the three fire departments for which he had worked. Mill Valley and San Antonio stipulated that the statutory presumption that cancer suffered while employed as a firefighter arises out of the employment would apply to them if the elements set forth in section 3212.1 were proven. Marinwood contested the application of the presumption. Two issues pertaining to Marinwood were tried before a workers' compensation judge (WCJ) in September 2015: (1) whether Romo was an employee and/or volunteer firefighter of Marinwood entitled to workers' compensation benefits under sections 3352, subdivision (i), 3361, 3365, 3361.5, 3212.1 and Health and Safety Code section 13802; (2) whether the presumption under section 3212.1 applies against Marinwood where Romo was not a public safety employee from the time he stopped volunteering at Marinwood sometime between 1989 and 1991 and the year 2002, which is more than 120 months following the date he last worked for Marinwood.

After receiving trial briefs, hearing testimony from Romo and Marinwood fire captain John Bagala and admitting various exhibits, the WCJ issued findings of fact and an order. She concluded that Romo was "an active volunteer firefighting member of [Marinwood] from mid-1989 to early 1991 within the meaning of Labor Code sections 3212.1 and 3361" and that he "is entitled to the extension of the presumption under Labor Code section 3212.1, since he is within 120 months of the 'last date actually worked in the specified capacity.' "

---

[3] At trial, Captain Bagala testified that he believed Marinwood had carried workers' compensation insurance for its volunteers since he had started working there in 1988. After trial, however, Marinwood proffered a resolution by the Marinwood Board of Directors indicating that "effective 2007, [a volunteer] was to be deemed an employee of the district for purposes of entitlement to workers' compensation benefits."

3

Seeking reconsideration of the WCJ's decision by the WCAB, Marinwood argued it was not a "regularly organized volunteer fire department" within the meaning of section 3361, and thus that firefighters who volunteered for it were not "employees" for workers' compensation statutes under that statute and that the extension of the presumption under section 3212.1 began to run as to Marinwood on the date Romo last worked for Marinwood. The WCJ recommended against reconsideration, on the ground, among others, that Marinwood had waived the first argument by failing to assert it until after trial. She also opined that the evidence supported a finding that Marinwood was a "regularly organized volunteer fire department," because the fire chief had testified it was a combination department and it had far more volunteers than paid staff. She again interpreted section 3212.1 to extend the presumption from the last day worked by a firefighter in the capacity as such, not the last day worked for a particular employer.

In January 2015, the WCAB denied Marinwood's motion for reconsideration, "[b]ased on our review of the record, and for the reasons stated in the WCJ's report, which we adopt and incorporate."

## DISCUSSION

### I.

### *The WCAB's Determination That Romo Was an Employee of Marinwood Was Based on a Reasonable Interpretation of the Relevant Statutes.*

Section 3352 excludes certain categories of persons from the term "[e]mployee" as used in the workers' compensation statutes. Subdivision (i) of that section generally excludes volunteers: "A person performing voluntary service for a public agency or a private, nonprofit organization who does not receive remuneration for the services, other than meals, transportation, lodging, or reimbursement for incidental expenses." Section 3361 is an exception to this exclusion. It provides: "Each member registered as an active firefighting member of any regularly organized volunteer fire department, having official recognition, and full or partial support of the government of the county, city, town, or district in which the volunteer fire department is located, is an employee of that county, city, town, or district for the purposes of this division, and is entitled to

4

receive compensation from the county, city, town or district in accordance with the provisions thereof." (See *County of Kern v. Workers' Comp. Appeals Bd.* (2011) 200 Cal.App.4th 509, 518 (*County of Kern*).)

Marinwood contends it is not (and was not when Romo was a volunteer firefighter there) a "regularly organized volunteer fire department" within the meaning of section 3361, and Romo therefore cannot claim the status of "employee" under that section.[4] If Romo does not fall within section 3361, he is excluded from the status of "employee" by section 3352, subdivision (i).

Marinwood asserts that "[a] volunteer fire department is one comprised solely of volunteer firefighters. This is distinguishable from a professional, or a combination fire department, which consists of both volunteers and paid career firefighters. Volunteer fire departments, though more common in the past, are now rare entities." Marinwood cites *County of Kern* for the proposition that "the requirements for a nonprofit organization to be classified as a volunteer fire department are stringent."

*County of Kern* does not address whether the phrase "regularly organized volunteer fire department" in section 3361 means only fire departments comprised entirely of volunteers or encompasses a department like Marinwood that is comprised of some professional firefighters and some volunteers. (See *County of Kern*, *supra*, 200 Cal.App.4th at p. 518 ["Kern agrees SCVFD is a 'regularly organized volunteer fire department' "].) Nor does *County of Kern* support Marinwood's contention that the "requirements" for classification as a volunteer fire department are "stringent." The language Marinwood quotes from *County of Kern* at page 514 is simply a recitation of

---

    [4] Relatedly, Marinwood contends it was Romo's burden to establish the factual predicates of section 3361, and that he failed to do so. However, since we conclude that section 3361 applied based on the evidence Romo submitted at the trial, it goes without saying that Romo carried his burden and we need not separately address that point. Likewise, Marinwood challenges the WCAB's determination, on petition for rehearing, that it waived the argument that it was not a volunteer fire department, but we need not address the issue of waiver because, notwithstanding its holding that Marinwood waived the issue, the WCAB reached the merits and we conclude its decision on the merits is correct.

the facts pertaining to the volunteer fire department that was the subject of that case, not a statement of requirements that must be met for a department to be considered a volunteer department under section 3361.

In discussing the question that was before it in *County of Kern*, which was whether the Sand Canyon Volunteer Fire Department had " 'official recognition, and full or partial support of the government of the county' " within the meaning of section 3361, the Fifth District declined to adopt the "extremely narrow definitions to the terms within the statute" Kern County urged it to adopt. (*County of Kern*, *supra*, 200 Cal.App.4th at p. 518; *id*. at pp. 518–525.)  The court analogized its interpretation of these terms in section 3361 to that given in *Machado v. Hulsman* (1981) 119 Cal.App.3d 453 to another phrase in that section, stating:  "Indeed, the Court of Appeal in [*Machado*] similarly applied a broad interpretation of section 3361's terms towards extending workers' compensation coverage by concluding that a volunteer firefighter fell within the workers' compensation laws and was precluded from filing a separate personal injury action. Without a more precise definition of the term 'registered firefighter' in the statute, the court concluded the volunteer fire department's 'Record of Fires' log listing the volunteer as having responded to and participated in six emergency calls sufficiently met the registration requirement.  [Citation.]  As the court explained, '[s]ince no particular form of registration is mandated by section 3361, a liberal interpretation of its terms encompasses the district's "Record of Fires." ' "  (*County of Kern*, at p. 520.)  Far from supporting Marinwood's argument that the courts should interpret section 3361 as imposing "stringent" requirements in determining what constitutes a "volunteer fire department" under section 3361, *County of Kern* and *Machado* support a "broad interpretation" of that section after "look[ing] to ' " 'the usual, ordinary import of the language employed . . . .' " ' "  (*County of Kern*, at p. 519.)

"In attempting to ascertain the meaning of a word in a statute, we refer to common dictionary definitions."  (*County of Kern*, *supra*, 200 Cal.App.4th at p. 519, citing *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122.)  Merriam-Webster defines "volunteer," used as an adjective, to mean "being, consisting

6

of, or engaged in by volunteers." (<https://www.merriam-webster.com/dictionary/volunteer> [as of Mar. 29, 2017].)  Dictionary.com defines it to mean "of, relating to, or being a volunteer or volunteers:  a volunteer fireman." (<http://www.dictionary.com/browse/volunteer> [as of Mar. 29, 2017].)  These definitions are broad enough to encompass an entity composed entirely of volunteers and one comprised of both volunteers and non-volunteers.  A clearer way to describe a force comprised entirely of volunteers is "all-volunteer."  The Legislature could have, but did not, use that narrower terminology in section 3361.

The WCJ interpreted the "volunteer fire department" language in section 3361 to encompass a department composed of some professional firefighters and even more volunteers.  In holding the evidence supported a finding that "Marinwood was and is a volunteer fire department," she stated:  "At trial, John Bagala, Marinwood's Fire Captain and Training Officer, testified that Marinwood is a combination fire department, which according to Captain Bagala, means that it has paid firefighters as well as volunteer firefighters.  The volunteer firefighters, which at the time [Romo] worked there numbered 24 as compared to the 7 paid firefighters, are highly trained, considered 'on call' 24 hours a day and take direction only from paid firefighters."  As already stated, the WCAB adopted and incorporated the WCJ's opinion as its own.

The language "volunteer fire department" in section 3361 is ambiguous in regard to whether it extends to a department comprised predominantly, but not exclusively, of volunteers.  The WCAB's interpretation of section 3361 is reasonable, and we give it weight.  Its interpretation is consistent with the purpose of the statutory scheme.  By adopting it, we follow the directive of section 3202 that the workers' compensation statutes "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."  (See *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187, 1196 [section 3202 " 'provides a means for resolution of ambiguities in the statutes which affect coverage' "].)

7

***The WCAB's Determination That the Extension of the Cancer Presumption Ran from the Date Romo Last Worked as a Firefighter for Any Agency Was Based on a Reasonable Interpretation of the Relevant Statute.***

Marinwood next contends the WCAB misconstrued section 3212.1. That section provides a presumption that cancer that develops or manifests during a firefighter's employment was industrially caused. It provides, in relevant part: "(a) This section applies to all of the following: [¶] (1) Active firefighting members, whether volunteers, partly paid, or fully paid, of all of the following fire departments: [¶] (A) A fire department of a city, county, city and county, district, or other public or municipal corporation or political subdivision. [¶] . . . [¶] (b) The term 'injury,' as used in this division, includes cancer, including leukemia, that develops or manifests itself during a period in which any member described in subdivision (a) is in the service of the department or unit, if the member demonstrates that he or she was exposed, while in the service of the department or unit, to a known carcinogen as defined by the International Agency for Research on Cancer, or as defined by the director. [¶] (c) The compensation that is awarded for cancer shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits, as provided by this division. [¶] (d) The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by evidence that the primary site of the cancer has been established and that the carcinogen to which the member has demonstrated exposure is not reasonably linked to the disabling cancer. Unless so controverted, the appeals board is bound to find in accordance with the presumption. *This presumption shall be extended to a member following termination of service for a period of three calendar months for each full year of the requisite service, but not to exceed 120 months in any circumstance, commencing with the last date actually worked in the specified capacity.*" (§ 3212.1, italics added.)

Marinwood argues the above-quoted sentence is to be applied separately to each employer for whom a firefighter worked. Under its interpretation, the extension began to

run for Romo, as regards Marinwood, when he last worked as a firefighter *for Marinwood* in 1991, and expired no later than six calendar months thereafter, three for each of the two years he worked *for Marinwood.*  Marinwood contends this is the plain meaning of section 3212.1, focusing on the language of subdivision (b) defining injury to include cancer that develops or manifests while the firefighter " 'is in the service of **the** department or unit, if the member demonstrates that he or she was exposed while in the service of **the** department or unit, to a known carcinogen . . . .' "  According to Marinwood, subdivision (b) "makes clear that the presumption of injury focuses on one specific and particular employer or entity by using the singular article 'the.' "  This " 'operates to protect the **agencies** against whom the presumption would apply by placing reasonable, common sense, and practical limitations to the scope of such an extraordinary presumption as is granted under section 3212.1.' "

Romo argues the language in section 3212.1, subdivision (d), which creates the extension of time for asserting the presumption, "makes no reference to any particular employer or entity."  Subdivision (d) refers to "the last date actually worked in the specified capacity," not the last date worked for a particular employer.

The WCJ and WCAB rejected Marinwood's interpretation and embraced Romo's.  The WCJ stated:  "There is no dispute that applicant was diagnosed with prostate cancer more than 120 months following his last employment with Marinwood in 1991. . . .  [I]f the 'last date actually worked in the specified capacity' applies only to [Romo's] last date of employment at Marinwood, then the presumption under Labor Code section 3212.1 would not apply against Marinwood.  If the 'last date actually worked in the specified capacity' applies to [Romo's] last date of work as a firefighter for any employer, then the presumption would apply to Marinwood (assuming all the other elements are met) since applicant continues to work at the present as a firefighter."

The WCJ and WCAB interpreted the language in subdivision (d) "last date actually worked in the specified capacity" to mean the last day worked in the capacity of a firefighter for any employer.  That is, they held the extension of the presumption commences to run only after the firefighter ceases working as a firefighter altogether.

9

They acknowledged there was no "judicial authority defining the meaning of the 'last date actually worked in the specified capacity' " and relied on the WCAB panel decision in *Lund v. Dept. of Forestry* (Cal. W.C.A.B. Feb. 18, 2011, No. ADJ1649220) 2011 Cal.Wrk.Comp.P.D. LEXIS 126.

In *Lund v. Dept. of Forestry*, the firefighter had worked at two local fire departments and one state firefighting agency at different times, in 1978, from 1987 to 1998, and from 1998 to 2004, and the WCJ and the panel (*Lund v. Dept. of Forestry*, *supra*, 2011 Cal.Wrk.Comp.P.D. LEXIS 126 at p. *1 [WCAB adopts panel decision]) faced the same issue raised here: "whether specified capacity is limited to the period the member actually worked for a specific entity." (*Id*. at p. *8.) They answered that question in the negative, reasoning: "Section 3212.1[, subd.] (d) does not specify the presumption applies to the period following termination of employment. Rather, the presumption applies to firefighters following the termination of service of the last actual date of work in the specified capacity. In other words, the time runs from the last actual date of work as a firefighter or peace officer. Capacity is defined as a position, function or relation in the 1984 Random House College Dictionary Revised Edition. When using the term 'specified capacity,' 3212.1[, subdivision] (d) refers to the position set forth in section (a). Any other application would treat [a] firefighter or peace officer employed by different entities different [from] one who is employed by one entity in determining the number of months the presumption would apply after an individual last worked in that occupation. This was the situation in *City of San Leandro v. WCAB* (*Waltman*) 71 Calif. Comp. Cas. 262 (Writ Denied 2005). There the peace officer's entire period of employment with the City of Oakland and the City of San Leandro was used to determine the number of months the presumption applied after he left the employ of the [City of] San Leandro." (*Id.* at pp. *8–*9.)

Our own research revealed a third WCAB panel decision deciding the same issue in the same way: *Suarez v. Dept. of Forestry & Fire Protection Coastal* (Cal. W.C.A.B. Jan. 15, 2015, No. ADJ8691488) 2015 WL 362732. In *Suarez*, the WCAB construed section 3212.1, subdivision (d) "as extending the presumption to the period following the

last actual date of work in the capacity of a firefighter, not the last date of employment with a specific employer." (*Suarez*, at p. *4.)

The WCAB's interpretation of section 3212.1 in this and other cases furthers the purpose of the cancer presumption. As the Second District recognized in another case involving that presumption: "[I]n the case of certain public employees who provide 'vital and hazardous services' to the public [citation], the Labor Code contains a series of presumptions of industrial causation. These presumptions provide that when specified public employees develop or manifest particular injuries or illnesses, during their employment or within specified periods thereafter, the injury or illness is presumed to arise out of and in the course of their employment. (See §§ 3212 [hernia, heart trouble, pneumonia], 3212.2, 3212.3, 3212.4, 3212.5, 3212.6 [tuberculosis], 3212.7, 3212.8 [blood-borne infectious diseases], 3212.85 [exposure to biochemical substances that may be used as weapons of mass destruction], 3212.9 [meningitis], 3212.10, 3212.11 [skin cancer], 3212.12 [Lyme disease], 3213, 3213.2 [lower back impairments].) These presumptions are a reflection of public policy. [Citation.] Their purpose is to provide additional compensation benefits to employees who provide vital and hazardous services by easing their burden of proof of industrial causation." (*City of Long Beach v. Workers' Comp. Appeals Bd.* (2005) 126 Cal.App.4th 298, 310–311.)

Construing section 3212.1 to commence the extension period for the cancer presumption to the point at which a firefighter has stopped firefighting altogether rather than when he ceased work for a particular employer ensures that individuals engaged in the "vital and hazardous service[]" of firefighting will benefit from the presumption that eases their burden of proof that on the job exposure to carcinogens was industrially caused. The risk of cancer for Romo did not end when he left Marinwood because he continued to serve as a firefighter after that, for San Antonio and then Mill Valley.

In short, the WCAB's interpretation of subdivision (d) of section 3212.1 is reasonable and we see no reason to reject it.

Romo seeks an award of attorney fees and costs under section 5801, arguing there was no reasonable basis for Marinwood's Petition for Writ of Review. The request is

11

denied.  (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1273–1274 [petition was not without reasonable basis where it raised a question of law that was previously unaddressed].)

**DISPOSITION**

For the foregoing reasons, we affirm the WCAB's decision.

STEWART, J.

We concur.

KLINE, P.J.

RICHMAN, J.

Counsel:

D'Andre, Peterson, Bobus & Rosenberg, Bernard J. Finnegan, Bonnie B. Park for Petitioners.

Workers' Compensation Appeals Board, Anne Schmitz, James T. Losee for Respondent.

Law Offices of Linda Joanne Brown, Karina Kowler for Respondent.

Laughlin, Falbo, Levy & Moresi, Kevin R. Calegari, Stephanie M. Drenski for Respondent.